UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

FRANK M. PECK,

                              Plaintiff,

v.

STATE OF NEVADA, *ex rel.* et al.,

                              Defendants.

Case No. 2:18-cv-00237-APG-VCF

**SCREENING ORDER AND ORDER FOR DEFENDANTS TO RESPOND TO MOTION FOR PRELIMINARY INJUNCTION**

Frank M. Peck is a prisoner in the custody of the Nevada Department of Corrections. Peck has submitted a civil rights complaint under 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*, a motion for a temporary restraining order, and a motion for preliminary injunction. ECF No. 1-1, 1, 4, 5. The matter of the filing fee shall be temporarily deferred. I now screen Peck's civil rights complaint under 28 U.S.C. § 1915A.

I.      **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty

is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF COMPLAINT

In the complaint, Peck sues multiple defendants for events occurring at High Desert State Prison ("HDSP"). ECF No. 1-1 at 1. Peck sues: the State of Nevada, *ex rel.*; the Nevada Department of Corrections ("NDOC"); Prison Commissioners; Brian Sandoval, Governor; Barbara Cegavski, Secretary of State; Adam Laxalt, Attorney General; James Dzurenda, Director of Prisons; Brian Williams, HDSP Warden; Jennifer Nash, Associate Warden; Perry Russell, Associate Warden; T. Tiernes, Acting Assistant Warden; Ennis Wright, Case Worker;[1] Jaques Graham, Law Library Supervisor; Dwaine Wilson, Food Service Manager; Frank A Toddre, Deputy Attorney General; Jerry A, Wiese, District Court Judge; Sergeant Alexis Lonzano; Sergeant Julie Matousec; Sergeant Dugan; Officer Joel Queroz; unknown number of Roe Defendants in Count I; and, an unknown number of Doe Defendants in Count V.[2] Id. at 3-7.

Peck alleges multiple causes of action in Counts I through VI. *Id.* at 8-17. In Count I, Peck alleges a violation of his right to access the courts. *Id.* at 8. In Count II, Peck alleges a violation of due process and retaliation in violation of the First Amendment. *Id.* at 11. In Count III, Peck

---

[1] Throughout the complaint, Peck refers to defendant Wright as "Ennis."

[2] Peck states in Count V his intention to determine the identities of an unknown number of Doe Defendants through discovery. ECF No. 1-1 at 16. As a general rule, the use of "Doe" pleading to identify a defendant is not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, I recognize that there are situations "where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.* "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

alleges violation of his right to access the courts. *Id.* at 13. In Count IV, Peck alleges violation of his right to due process and equal protection under the Fourteenth Amendment and his right of access to the courts. *Id.* at 14. In Count V, Peck alleges equal protection violations in violation of the Fourteenth Amendment and deliberate indifference to safety and medical needs in violation of the Eighth Amendment. *Id.* at 16. In Count VI, Peck alleges violation of his right to access the courts. *Id.* at 17. Peck seeks compensatory and punitive damages as well as injunctive and declaratory relief. *Id.* at 20.

## A. Suing Improper Defendants and Attempted Relitigation of State Court Judgments

First, I will address two issues that arise throughout the complaint: suing improper defendants or those who are immune from suit and attempting to relitigate state court judgments.

Peck names the State of Nevada, *ex rel.*, NDOC, and the [Board of] Prison Commissioners as defendants.

I dismiss with prejudice all claims against defendant State of Nevada *ex rel*. as amendment would be futile. Peck cannot assert claims under 42 U.S.C. § 1983 or state law against the State of Nevada based on Eleventh Amendment sovereign immunity. *Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (holding that "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state" and that "[t]he Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature"); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding that states are not persons for purposes of § 1983); *see* NRS § 41.031(3) (stating that the State of Nevada does not waive its Eleventh Amendment immunity). The Ninth Circuit has explicitly held that 28 U.S.C. § 1367, the supplemental jurisdiction statute, "does not abrogate state sovereign immunity for supplemental state law claims." *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1133-34 (9th Cir. 2006).

I also dismiss with prejudice all claims against NDOC as amendment would be futile. NDOC is an agency of the State of Nevada and is not a "person" for purposes of 42 U.S.C. § 1983.

*Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Black v. Nevada Dep't of Corr.*, 2:09-cv-2343-PMP-LRL, 2010 WL 2545760, *2 (D. Nev. June 21, 2010).

I likewise dismiss with prejudice all claims against the Board of Prison Commissioners as amendment would be futile. The Nevada Board of Prison Commissioners is an arm of the State of Nevada. *Ruley v. Nevada Bd. of Prison Comm'rs*, 628 F. Supp. 108, 110 (D. Nev. 1986). A governmental agency that is the arm of the State is not a person for purposes of § 1983. *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990).

Additionally, in multiple places in the complaint Peck contends that the defendants engaged in fraud to secure a state court judgment. Under the *Rooker–Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Additionally, a federal district court may not decide any issue that is a *de facto* appeal from a judicial decision from a state court or any issue raised in a suit that is "inextricably intertwined" with an issue resolved by a state court in its judicial decision. *Id.* at 1158. "A party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court." *Id.* at 1155. "A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court." *Id.* "In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties." *Id.* To the extent that Peck is attempting to relitigate those judgments or any issues resolved by a state court in its judgment, I dismiss those claims with prejudice as amendment would be futile.

### B.     Count I – Right to Access the Courts

#### 1.     Alleged Facts

Peck alleges the following facts. Defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams all personally approved, enacted, or implemented the recently amended AR 740.[3] ECF

---

[3] AR 740 is the Nevada Department of Corrections Administrative Regulation Governing Inmate Grievance Procedures, amended in September, 2017. Available at *http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2074*

No. 1-1 at 8.  AR 740 unreasonably restricts legal claims, through a variety of mechanisms, and also effectively renders the grievance process unavailable. *Id.*  Kites are required as prerequisite for filing informal grievances but there are no set times for answering kites by staff. *Id.*  Staff fail to answer kites, but a kite response is required as an attachment to an informal grievance, and informal grievances are rejected based on lack of such attachment, making the grievance process unavailable and foreclosing review of the issues raised. *Id.*  Further, AR 740 prevents raising all but four issues per four weeks. *Id.* at 9.  AR 740 requires informal grievances to be submitted within 30 days for tort and civil rights claims, and within 10 days for other claims, but only allows one grievance per seven-day period, and leaves any other issues excluded by time limitations. *Id.*

The following is an example of how AR 740's limitations foreclose the possibility of administrative and legal relief on all issues.  On December 12, 2017, Peck was using the law library for his single weekly session when officers forced everyone to leave all materials behind and go outside. *Id.*  This event created several different grievable issues requiring different grievances, including: 1) missing legal documents, caused by defendant Dugan; 2) loss of session research; 3) threats made by defendant Graham; 4) refusal to sell research in a font big enough for Peck to comfortably read; 5) library overcrowding with 35-plus inmates. *Id.*  Additionally, 6) on December 20, 2017, defendant Graham "lost" Peck's caselaw request; 7) NDOC refused to clean prison laundry for three weeks during the holidays; and 8) on December 22, 2017 medical staff told Peck his seizure medication had run out and he would not get a refill until January. *Id.*  Peck was forced to choose which of the above rights to pursue, both through administrative resolution with the prison and through litigation, as exhausting administrative remedies is a prerequisite to bringing a federal civil rights claim under the Prison Litigation Reform Act.[4] *Id.*

Defendant Sandoval signed legislation prohibiting inmates from accessing public records, denying Peck access to records necessary for litigation. *Id.* at 10.  Defendant Cegavski returned

*0%20-%20Inmate%20Grievance%20Procedure%20-%20Final%20-%2003072017.pdf*.

---

[4] The Prison Litigation Reform Act states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2012).

Peck's freedom of information act request unanswered, denying Peck access to documents needed for civil rights litigation. *Id.*

Around the same time as AR 740 was amended, the defendants stopped selling carbon paper used to make copies of handwritten documents, released a biased mediation video, and also refused to copy documentary evidence relevant to grievances, including declarations by and for other inmates. *Id.* at 8. Defendants Nash and Graham made false sworn statements and refused to allow Peck to copy documents proving that claim. *Id.* at 10. An unknown number of Roe Defendants[5] refused to copy documentary evidence, causing the statute of limitations to expire before Peck could file issues in state and federal habeas petitions and claims for civil rights violations. *Id.* Defendants Nash and Russell intentionally and permanently lost staff misconduct complaints, along with attached supporting documentation. *Id.*

The defendants refused to allow exhaustion of grievances on the issues raised in this complaint. *Id.* at 8. Defendants Nash, Russell, Tiernes, and Graham are training staff to defeat inmate attempts at exhaustion through fraud. *Id.*

Defendant Graham tampered with evidence and exhibits in completed pleadings for state case A-16-743859. *Id.* Defendants in federal civil rights case 2:12-cv-01495-JAD-PAL defrauded the court by intentionally removing pages from Peck's complaint. *Id.* at 10.

Defendant Graham maliciously reduced Peck's law library time by 50% since January 2017. *Id.* at 8. The reduction in access caused Peck to fail to bring specific litigation within the statute of limitations. *Id.*

The above restrictions and improper acts caused Peck to fail to comply with procedural rules in civil rights and habeas litigation, thwarted Peck from bringing civil rights and habeas litigation within the statute of limitations, and has caused additional civil rights and habeas litigation to be abandoned. *Id.* at 8, 10.

---

[5] If the true identity of any of the Roe Defendants comes to light during discovery, Peck may either move to substitute the true names or move to amend his complaint to assert claims against those defendants at that time.

2.       Relitigation of Other Cases

In this Count, Peck attempts to relitigate cases decided in other courts. Peck alleges that defendant Graham tampered with evidence and exhibits in completed pleadings for state case A-16-743859. That claim was litigated before the state trial court, and this court has no jurisdiction to hear it. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Peck also alleges that the defendants in federal civil rights case 2:12-cv-01495-JAD-PAL defrauded the court by intentionally removing pages from Peck's complaint. Any appealable issue in that case is properly brought before the Ninth Circuit Court of Appeals, not this court.

3.       Access to the Courts

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id*. at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Id*. at 349. An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id*. at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id*. at 353 n.3, 354-55.

a.       AR 740

AR 740 was amended in September 2017, and requires inmates generally to "resolve

grievable issues through discussion with staff whose duties fall within the issue prior to initiating the grievance process . . . [and] Inmates are encouraged to use a kite to bring issues to the attention of staff." AR 740.04(1).  If the issue is not resolved, then "[t]he inmate shall file an informal grievance within…one (1) month if the issue involves personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims . . . [and within] ten (10) days if the issue involves any other issues within the authority and control of the Department including, but not limited to, classification, disciplinary, mail and correspondence, religious items, and food." AR 740.05(4)(A) and (B).  "All documentation and factual allegations available to the inmate must be submitted at this [informal] level with the grievance." AR 740.05(5)(A).  "Failure by the inmate to submit a proper Informal Grievance form to the Grievance Coordinator or designated employee in their absence, within the time frame noted in 740.05, number 4, shall constitute abandonment of the inmate's grievance at this, and all subsequent levels . . . ." AR 740(8).  "The grievance response Form DOC-3098 will note that the inmate exceeded the timeframe and no action will be taken . . . ." AR 740(8)(B).

Peck states a colorable claim of denial of access to the courts based on the amended AR 740.  Peck's allegations show he is unable to grieve all the issues he wishes to pursue in civil rights and habeas litigation due to the restrictions in AR 740 to one grievance per week and one issue per grievance.  Administrative exhaustion through the grievance process is a requirement for relief in federal civil rights claims.  Defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams all personally approved, enacted, or implemented the amendment to AR 740.  Therefore, the portion of Count I alleging violation of access to the courts due to the restrictions in AR 740 shall proceed against defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams.

b.    Public Records

Peck states a colorable claim of the denial of access to the courts based on allegations that he was not allowed to access public records required for his civil rights and habeas claims.  Based on the allegations, defendant Sandoval signed into effect a law prohibiting inmate access to public records, and defendant Cegavski returned Peck's public records request unanswered.  Therefore, the portion of Count I alleging violation of access to the courts due to restrictions on access to

public records shall proceed against defendants Sandoval and Cegavski.

### c. Copy Claims

Peck states a colorable claim of denial of access to the courts based on refusal to copy documentary evidence. Based on the allegations, the defendants stopped selling carbon paper used to make copies of handwritten documents. An unknown number of Roe Defendants and defendants Nash and Graham refused to copy documentary evidence relevant to grievances, including declarations by and for other inmates, which caused the statute of limitations to expire before Peck was able to file issues in state and federal habeas petitions and claims for civil rights violations. Therefore, the portion of Count I alleging violation of access to the courts due to refusal to copy evidence will proceed against defendants Nash, Graham, and an unknown number of Roe Defendants when Peck learns their true identities.

### d. Grievance Claims

Peck states a colorable claim of denial of access to the courts based on inability to exhaust administrative grievances. Based on the allegations, staff are being trained by defendants Nash, Russell, Tiernes, and Graham to defeat inmate attempts at exhaustion through fraud. Staff allegedly refused to allow exhaustion of Peck's grievances on issues raised in this complaint. Defendants Nash and Russell intentionally and permanently disposed of Peck's staff misconduct complaints, along with attached supporting documentation. Therefore, the portion of Count I alleging violation of access to the courts based on training staff to fraudulently defeat Peck's attempts at exhaustion shall proceed against defendants Nash, Russell, Tiernes, and Graham.

### e. Law Library Claims

Peck states a colorable claim of denial of access to the courts based on the reduction in his law library time. Defendant Graham allegedly reduced Peck's law library time by 50% since January 2017. This reduction in access caused Peck to fail to bring specific litigation within the limitations period. Therefore, the portion of Count I alleging a violation of the right of access to the courts based on a reduction in law library time shall proceed against defendant Graham.

### C. Count II – Due Process and Retaliation

Peck alleges the following facts. Defendants Sandoval, Laxalt, and Dzurenda personally approved the AR 516 "Level System"[6] that is both arbitrarily applied and used as a retaliatory tool through false disciplinary charges against Peck. ECF No. 1-1 at 11. Peck was retaliated against for his use of the prison grievance system and filing civil rights lawsuits. *Id.* at 12. Peck has spent a year in Level 3 punitive segregation (not including 15 days in the hole) over two verbal reprimands. *Id.* AR 516 does not require due process or a disciplinary infraction for a level demotion. *Id.*

Defendant Williams upheld retaliatory OIC #423470, falsely written by defendant Russell. *Id.* at 11. Defendants Nash and Graham caused retaliatory OIC #408880, written by defendant Matousec, where Peck was found not guilty. *Id.* On June 15, 2017, Nash and Graham refused to copy documentary evidence in state case A-16-743859. *Id.* Defendant Wilson falsely wrote OIC #416942, causing Peck to be held in the hole (segregation) from December 1, 2016 to December 15, 2016; Peck was found not guilty on December 7, 2016. *Id.* This false disciplinary report also cost Peck his opportunity for a pardon in 2018. *Id.* Graham falsely wrote OIC #419330; Peck was found not guilty of Graham's charges but was found guilty of disobedience by defendant Lozano despite no order cited as being disobeyed. *Id.*

On December 7, 2017, defendants Wright and Queroz wrote a false OIC #436405 MJ-57 for refusal to move to another cell. *Id.* Peck had not been told he was to move and was "in a meeting with the AG at the time." *Id.* On January 1, 2018, Queroz falsely told hearing officer Lozano that he had told Peck to move cells and Peck refused. *Id.* Peck was falsely convicted on January 12, 2018, causing him to spend six more months in Level 3. *Id.* All of these actions negatively impacted Peck's ability to get parole. *Id.*

Peck possesses documentary evidence that Graham is retaliating against him by providing other inmates with more legal access than Peck, and that the defendants refuse to make copies of

---

[6] Peck states that OP 516 creates the level system at issue in the complaint. I presume that Plaintiff is referring to AR 516, the Nevada Department of Corrections Administrative Regulation that governs the "Level System." Available at http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2051 6%20-%20061712.pdf

evidence against themselves. *Id.* Peck lists a number of grievances that defendant Russell "killed" by rejecting them for a variety of false reasons in retaliation for Peck filing grievances and litigation. *Id.* at 12. Peck was retaliated against in 2009-2010 by being transferred between prisons five times, and by being placed into protective custody at HDSP despite being in general population for 15 years. *Id.*

### 1. Due Process

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). However, this standard does not apply when a prisoner alleges that a prison guard's report is false. *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997).

### a. AR 516/Level Classification

Peck fails to state a colorable due process claim regarding AR 516. Peck is attempting to state a due process claim based on his classification status as Level 3. Prisoners have no liberty interest in their classification status. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). I therefore dismiss with prejudice the portion of Count II alleging a due process violation for implementing level classifications pursuant to AR 516; amendment would be futile.

### b. Disciplinary Hearings

Peck states a colorable due process claim for retaliatory disciplinary hearings. Based on the allegations, defendant Wilson falsely wrote OIC #416942, causing Peck to be held in the hole (segregation) from December 1, 2016 to December 15, 2016; Peck was found not guilty on December 7, 2016. This false disciplinary report also cost Peck his opportunity for a pardon in 2018. Williams upheld retaliatory OIC #423470, falsely written by defendant Russell. Graham falsely wrote OIC #419330; Peck was found not guilty of Graham's charges but was found guilty of disobedience by defendant Lozano despite citing no order that was disobeyed. Defendants Wright and Queroz wrote a false OIC #436405 MJ-57 for refusal to move to another cell. Queroz falsely told hearing officer Lozano that he told Peck to move cells and Peck refused. Peck was falsely convicted on January 12, 2018. All of these disciplinary actions negatively impacted Peck's ability to be paroled. "[Section] 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). Therefore, the portion of Count II alleging due process violations for disciplinary hearings based on false statements will proceed against defendants Wilson, Williams, Russell, Graham, Lozano, Wright, and Queroz.

### c. Transfers

Prisoners do not have a liberty interest in avoiding a transfer to another prison. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"). To the extent Peck is claiming a due process violation for his numerous prison transfers from 2009-2010, that portion of Count II is dismissed with prejudice as amendment would be futile.

### d. Grievances

Prisoners have no stand-alone due process rights related to the administrative grievance process. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process).

Peck fails to state a colorable due process claim against defendant Russell because he "killed," or did not adequately investigate, Peck's grievances. Peck does not have a right to have prison officials process or investigate an inmate grievance in any specific way. As such, I dismiss with prejudice the portion of Count II alleging a due process violation regarding Peck's listed grievances, as amendment would be futile.

### 2. Retaliation

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.

Peck states a colorable retaliation claim. According to Peck, Williams upheld retaliatory OIC; Nash and Graham caused retaliatory OIC; Wilson, Matousec, Graham, Russell, Wright, and Queroz wrote false OICs, and Queroz gave false testimony in one of Peck's disciplinary hearing. Wilson's false OIC caused Peck to be in the hole for two weeks, and cost Peck an opportunity for

parole.  One conviction caused Peck to spend six more months in Level 3.  All of these disciplinary actions negatively impacted Peck's ability to get parole.

Graham retaliated against Peck by providing other inmates with more legal access than Peck.  Russell "killed" Peck's grievances by rejecting them for a variety of false reasons, in retaliation for Peck filing grievances and litigation.  Peck was also retaliated against in 2009-2010 by being transferred between prisons five times, and by being placed into protective custody at HDSP despite coexisting in general population for 15 years. *Id.*  However, Peck does not name the person or persons who allegedly retaliated against him by transferring him.

Therefore, the portion of Count II alleging retaliation shall proceed against defendants Williams, Nash, Graham, Wilson, Matousec, Graham, Russell, Wright, and Queroz.

### D.      Count III - Access to the Courts

Peck here lists nine grievances he alleges were impeded by the defendants specified in Count I, and states again that Nash and Graham refuse to copy Peck's documentary evidence. ECF No. 1-1 at 13.  Because the allegations are duplicative of Count I, I will not address Peck's grievance or copy claims here.

Peck alleges that in state case A-14-709060, the defendants were ordered to return 10 declarations that were confiscated by then Law Library Supervisor Paula Bennett, but the NDOC did not return those documents and is in contempt of that order. *Id.*  I dismiss with prejudice all claims against NDOC, as amendment would be futile.  As noted in Part II.A., *supra*, NDOC is an agency of the State of Nevada and is not a "person" for purposes of 42 U.S.C. § 1983. *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

Peck further alleges that Nash and Graham refused to allow Peck to research caselaw for criminal and civil issues in case CV-13-00580. ECF No. 1-1 at 13.  Peck states a colorable claim for denial of access to the courts.  As noted in Part II.B.2., *supra*, prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This right, however, "guarantees no particular

methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. Based on the allegations, Nash and Graham prevented Peck from researching law relevant to criminal and civil issues in case 13-cv-00580. Therefore, the portion of Count III alleging denial of access to the courts shall proceed against defendants Nash and Graham.

### E.  Count IV - Access to the Courts

Peck alleges the following facts. In Nevada state case No. A-16-743859-C, defendants Judge Weise, Nash, and Deputy Attorney General Toddre concealed and withheld discovery materials relevant to exhaustion. ECF No. 1-1 at 14. Generally, Peck claims that he was not provided with a copy of his grievance file by Toddre despite a motion to compel, and was therefore not able to prove that he had exhausted the claims he brought before the Nevada court. *Id*. Peck also makes claims of improper judicial behavior against Weise regarding Weise's handling of the grievance and exhaustion issues in the case, and other issues. *Id.* Peck further claims that defendants Dzurenda and Williams kept Peck from exhausting his claims via AR 740, and then defendant Nash presented only unexhausted claims to Judge Weiss. Peck claims that the improper actions by these defendants caused him to lose his civil rights case. *Id.*

I first address the issue of absolute immunity. Peck sues state District Judge Jerry A. Wiese for actions while adjudicating Peck's civil rights case. However, "[j]udges are absolutely immune from damage actions for judicial acts taken within the jurisdiction of their courts. . . . A judge loses absolute immunity only when [the judge] acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature." *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam) (citations omitted); *see also Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam); *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 750 (9th Cir. 2009) (absolute immunity is generally accorded to judges functioning in their official capacities). Judges retain their immunity when they are accused of acting maliciously or corruptly, *see Mireles*, 502 U.S. at 11; *Stump*, 435 U.S. at 356-57; *Meek*, 183 F.3d at 965; *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989), and when they are accused of acting in error, *see Meek*, 183 F.3d at 965; *Schucker*, 846 F.2d at 1204; *Ashelman*, 793 F.2d at 1075. Therefore, I dismiss all

claims against Judge Wiese with prejudice, as amendment would be futile.

Next, as noted in Part II.A., the *Rooker-Feldman* doctrine applies where Peck is attempting to relitigate a state court case. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). In this Count, Peck is attempting to have this court to take jurisdiction over a judgment and issues decided by the Nevada state court, namely whether Peck administratively exhausted the claims he brought in his civil rights suit. Therefore, Count IV is dismissed with prejudice, as amendment would be futile.

### F.    Count V - Equal Protection and Deliberate Indifference to Safety and Medical Needs

Peck alleges the following facts. Defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams have been notified and are aware of the non-functioning emergency medical call buttons in HDSP units 9-12, the protective custody units, and the life-threatening risk this presents. ECF No. 1-1 at 16. The lack of functioning emergency call buttons allows people to die without timely medical assistance, whereupon the deaths are determined to be of natural causes. *Id.* Inmates in HDSP units 1-8 have working emergency call buttons. *Id.* Similarly situated inmates living in cells in unit 7 at Ely State Prison, Warm Springs Correctional Center, Lovelock Correctional Center, and Northern Nevada Correctional Center have working emergency medical call buttons. *Id.* Non-party compliance officer Kieth Jaquillard stated that the buttons were determined to be non-life threatening, and their repair was deemed a capital improvement project that would not be funded. *Id.* An unknown number of Doe Defendants[7] made that determination. *Id.* Peck has documentary evidence of these allegations but is being denied copy services. *Id.*

### 1.    Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that the defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that the defendants purposefully

---

[7] If the true identity of any of the Doe Defendants comes to light during discovery, Peck may either move to substitute the true names of those defendants or move to amend his complaint to assert claims against them at that time.

treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

When analyzing a discrimination claim under the Fourteenth Amendment, the courts "must first determine the appropriate level of scrutiny to be applied. If the rule disadvantages a suspect class or impinges upon a fundamental right, the court will examine it by applying a strict scrutiny standard. If no such suspect class or fundamental rights are involved, the conduct or rule must be analyzed under a rational basis test." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990).

Peck states a colorable equal protection claim. Peck alleges that inmates in HDSP units 9-12 have non-functioning emergency medical call buttons, while many other similarly situated inmates have functioning emergency medical call buttons. An unknown number of Doe Defendants deemed the repair of those call buttons a capital improvement project that would not be funded, and defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams are aware of the problem and the life-threatening risk. Therefore, the portion of Count V alleging an equal protection violation shall proceed against defendants Sandoval, Cegavski, Laxalt, Dzurenda, Williams, and the Doe Defendants (should Peck learn their true identities).

2. Eighth Amendment

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832.

To establish violations of these duties, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the

- 18 -

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id*. at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id*. at 843.

Peck states a colorable Eighth Amendment claim for deliberate indifference to safety. Based on his allegations, the lack of functioning emergency call buttons allows people to die without timely medical assistance. Defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams are all aware of the problem and the life-threatening risk, and some of the Doe Defendants made the decision not to repair the call buttons. Therefore, the portion of Count V alleging an Eighth Amendment violation shall proceed against defendants Sandoval, Cegavski, Laxalt, Dzurenda, Williams, and the Doe Defendants (should Peck learn their true identities).

### G.    Count VI - Right to Access the Courts

Peck alleges the following facts. Defendants Laxalt and Dzurenda failed to provide or withheld adequate research materials or material facts that would be discoverable through an adequate law library. ECF No. 1-1 at 17. The defendants thereby prevented Peck from raising issues with scientific evidence in his habeas case now pending in federal court.[8] *Id*.

Peck states a colorable claim of denial of access to the courts. As noted in Part II.B.2., *supra*, prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. Peck alleges that Laxalt and Dzurenda prevented him from raising issues with scientific evidence in his pending federal habeas case by failing to provide him

---

[8] Peck states that he was prejudiced in his "trial" now pending in federal court. I interpret Peck to refer his pending federal habeas case because I am aware of no pending federal criminal case being prosecuted against Peck.

with an adequate law library. Therefore, Count VI alleging violation of the right of access to the courts shall proceed against defendants Laxalt and Dzurenda.

**III. Motion for Preliminary injunction**

Peck has filed a motion for preliminary injunction. EFC No. 5. Peck alleges the following facts. The defendants' failure to provide functional emergency medical alarms creates a life-threatening environment for Peck and other inmates in units 9-12. *Id.* at 2. The defendants are aware of and indifferent to this threat to the inmates. *Id.* Peck has already experienced harm as a result of the lack of emergency medical buttons. *Id.* He was asked by the defendants to keep his own seizure medication, to which he agreed. But Peck's seizure medication was allowed to lapse causing Peck to have a seizure. *Id.* Peck's attempts to call for medical help were not answered as his emergency medical button did not function. *Id.* Peck eventually recovered. *Id.*

Peck possesses multiple declarations from other inmates who have not received necessary emergency medical assistance due to the lack of functioning emergency medical buttons. *Id.* at 3. Peck also possesses a document where the warden of the facility makes the false claim that the emergency medical buttons are not in fact emergency buttons, but only an intercom for communicating with staff. *Id.* The defendants refuse to allow copying of this documentary evidence. *Id.*

On the day Peck wrote this motion, Cavalirri, an 86-year-old throat-cancer patient who also uses a wheelchair called for help. *Id.* An officer heard Cavalirri call "help me" and acknowledged him, but kept walking. *Id.* Most of the inmates in the wing then banged and kicked their doors for nearly 30 minutes to get medical attention for Cavalirri before another officer responded. *Id.* It took an additional 30 minutes for medical personnel to respond. *Id.* Cavalirri's condition at that time was determined by medical staff not to be immediately life-threatening, though he was in extreme pain. *Id.*

Peck allegedly has grievances as far back as 2005 where NDOC acknowledged that the button is in fact an emergency medical and safety button, including grievance # 2005-26-7124. *Id.* at 4. There is video evidence that inmates, including Peck, have been totally ignored by staff for hours at a time, without any means to call for help. *Id.* Inmates have died due to the lack of an

emergency call button. *Id.*

Peck requests that HDSP close units 9-12, or in the alternative repair the emergency medical call buttons. *Id.* at 1. Peck further requests that there be an audit and a criminal investigation into the inmate deaths in units 9-12. *Id.* at 4. Finally, Peck requests a secure way for him to copy documentary evidence, since the defendants refuse to copy the evidence to keep Peck from presenting it. *Id.*

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the Prison Litigation Reform Act (PLRA), preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

Based on the facts alleged in the motion and complaint, Peck states a colorable claim for Eighth Amendment deliberate indifference to safety. Furthermore, Peck could likely suffer irreparable harm due to his lack of access to a functioning emergency call button. Thus, I order the Attorney General's Office to advise the court within 21 days from the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of responding to the motion for preliminary injunction. Additionally, based on the nature of the allegations, the defendants shall file their response to Peck's motion for preliminary injunction also within 21 days from the date of entry of this order.

**IV.     Motion for Temporary Restraining Order**

Peck has filed a motion for a temporary restraining order. ECF No. 4.  He claims that the defendants are continuing to retaliate against him, frustrating his legal claims. *Id.* at 2-3.  Peck is concerned that the defendants are conspiring to make false disciplinary charges against him in order to have him transferred to Ely State Prison, where he will not have access to a law library. *Id.* at 4. Peck is also concerned that a transfer will decrease his safety. *Id.*  Peck makes other claims about the general lack of safety in protective custody at HDSP due to gangs, inmate frustration at the new grievance system, lack of tier time, and lack of medical care. *Id.* at 5-7.  Peck requests that the defendants be restrained from further retaliatory acts intended to increase his disciplinary score and get him transferred to Ely. *Id.* at 8.

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F.Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

While Peck states colorable claims based on the allegations in his complaint, I am not convinced he is likely to succeed on the merits.  Further, I am not convinced that Peck will suffer irreparable harm in the absence of an injunction.  Therefore, Peck's motion for temporary restraining order is dismissed, without prejudice.

## V.  CONCLUSION

For the foregoing reasons, it is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court will file the complaint (ECF No. 1-1) and send Peck a courtesy copy of the complaint.

It is further ordered that all claims against defendant State of Nevada *ex rel.*, the Nevada Department of Corrections, and the Board of Prison Commissioners, are dismissed from this lawsuit with prejudice, as amendment would be futile.

It is further ordered that, to the extent Peck is attempting to relitigate any judgments by a state court or any issues resolved by a state court, I dismiss those claims with prejudice, as amendment would be futile.

It is further ordered that the portion of Count I alleging denial of access to the courts due to the restrictions in AR 740 shall proceed against defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams.

It is further ordered that the portion of Count I alleging denial of access to the courts due to restrictions on access to public records shall proceed against defendants Sandoval and Cegavski.

It is further ordered that the portion of Count I alleging denial of access to the courts due to refusal to copy evidence will proceed against defendants Nash, Graham, and an unknown number of Roe Defendants (when Peck learns their true identities).[9]

It is further ordered that the portion of Count I alleging denial of access to the courts based on training staff to fraudulently defeat Peck's attempts at exhaustion of his claims shall proceed against defendants Nash, Russell, Tiernes, and Graham.

It is further ordered that the portion of Count I alleging a denial of the right of access to the courts based on a reduction in law library time shall proceed against defendant Graham.

---

[9] If the true identity of any of the Roe Defendants comes to light during discovery, Peck may either move to substitute the true names of Roe Defendants or move to amend his complaint to assert claims against the Roe Defendants at that time.

It is further ordered that the portion of Count II alleging a due process violation for implementing level classifications pursuant to AR 516 is dismissed with prejudice, as amendment would be futile.

It is further ordered that the portion of Count II alleging due process violations for disciplinary hearings based on false statements by the defendants will proceed against defendants Wilson, Williams, Russell, Graham, Lozano, Wright, and Queroz.

It is further ordered that, to the extent that Peck is claiming a due process violation for his prison transfers from 2009-2010, that portion of Count II is dismissed with prejudice, as amendment would be futile.

It is further ordered that the portion of Count II alleging a due process violation regarding Peck's listed grievances is dismissed with prejudice, as amendment would be futile.

It is further ordered that the portion of Count II alleging retaliation shall proceed against defendants Williams, Nash, Graham, Wilson, Matousec, Graham, Russell, Wright, and Queroz.

It is further ordered that the portion of Count III alleging denial of access to the courts shall proceed against defendants Nash and Graham.

It is further ordered that all claims against defendant Judge Wiese are dismissed with prejudice, as amendment would be futile. Defendant Judge Wiese is dismissed from the entirety of the case.

It is further ordered that Count IV is dismissed with prejudice as amendment would be futile.

It is further ordered that the portion of Count V alleging an equal protection violation shall proceed against defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams, and against an unknown number of Doe Defendants, should Peck learn their true identities.[10]

---

[10] If the true identity of any of the Doe Defendants comes to light during discovery, Peck may either move to substitute the true names of Doe Defendants or move to amend his complaint to assert claims against the Doe Defendants at that time.

It is further ordered that the portion of Count V alleging an Eighth Amendment violation shall proceed against defendants Sandoval, Cegavski, Laxalt, Dzurenda, and Williams, and against an unknown number of Doe Defendants should Peck learn their true identities.[11]

It is further ordered that Count VI alleging denial of the right of access to the courts shall proceed against defendants Laxalt and Dzurenda.

It is further ordered that Peck's motion for temporary restraining order **(ECF No. 4) is denied without prejudice.**

It is further ordered that a decision on Peck's motion for preliminary injunction (ECF No. 5) is deferred.

It is further ordered that the Clerk of the Court shall electronically serve a copy of this order, a copy of Peck's complaint (ECF No. 1-1), and a copy of Peck's motion for preliminary injunction (ECF No. 5) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office shall advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the defendants for the purpose of responding to the motion for preliminary injunction and settlement. No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance. **It is further ordered that the defendants shall file a response to Peck's motion for preliminary injunction (ECF No. 5) within 21 days from the date of entry of this order.** If Peck chooses to file a reply in support of his motion for preliminary injunction, he shall do so within 15 days after the defendants' response is filed.

It is further ordered that given the nature of the claims that I have permitted to proceed, this action is stayed—**except for the motion for preliminary injunction**—for 90 days to allow Peck and the defendants an opportunity to settle their dispute before the $350.00 filing fee is paid,

---

[11] If the true identity of any of the Doe Defendants comes to light during discovery, Peck may move to either substitute their true names or amend his complaint to assert claims against them at that time.

an answer is filed, or the discovery process begins. During this 90-day stay period, no other pleadings or papers shall be filed in this case except for the briefs related to the motion for preliminary injunction, and the parties shall not engage in any discovery. I will refer this case to the court's Inmate Early Mediation Program, and a subsequent order will be entered. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the court will then issue an order setting a date for the defendants to file an answer or other response. Following the filing of an answer, the court will issue a scheduling order setting discovery and dispositive motion deadlines. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Peck's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Peck will be required to pay the full $350.00 filing fee. This fee cannot be waived. If Peck is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account. 28 U.S.C. § 1915(b). If Peck is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party shall file a "motion to exclude case from mediation" on or before 21 days after the entry of this order. The responding party shall have seven days to file a response. No reply shall be filed.

DATED THIS 5th day of July, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FRANK M. PECK,

        Plaintiff,

    v.

STATE OF NEVADA, *ex rel*, et al.,

        Defendants.

Case No. 2:18-cv-00237-APG-VCF

REPORT OF ATTORNEY GENERAL RE:
RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

## REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_\_    No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in*

- 27 -

*this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:


Attorney Name: _____        _____
                        Print                              Signature


Address:                        Phone:
                                Email: