# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FRANK PECK,

     Plaintiff

v.

STATE OF NEVADA, *et al.*,

     Defendants

Case No.: 2:18-cv-00237-APG-VCF

**Order Granting Motion to Dismiss and Denying Motion for Preliminary Injunction and Restraining Order**

[ECF No. 106, 123, 125, 129]

Plaintiff Frank Peck, an inmate in the custody of the Nevada Department of Corrections and currently incarcerated at High Desert State Prison (HDSP), brings this lawsuit against the defendants, including those in charge of prison administration in Nevada and employees at HDSP.[1]   Based on multiple events, Peck alleges violations of his right to access the courts, due process, equal protection under the Fourteenth Amendment, Eighth Amendment deliberate indifference to safety, and retaliation for engaging in protected activity.  He seeks compensatory and punitive damages as well as injunctive and declaratory relief.

The court screened Peck's complaint and amended complaint, and allowed the following causes of action to proceed:[2]

- ▪ Count I(a): denial of access to the courts due to restrictions in Administrative Regulation (AR) 740[3] against Brian Sandoval, Barbara Cegavski, Adam Laxalt, James Dzurenda, and Brian Williams.

---

[1] The parties use different spellings for several defendants' names, sometimes within the same brief.  The parties should identify the proper spelling of these defendants' names and move to amend the caption if necessary.

[2] I separate the counts into sub-claims for clarity, which mirror the defendants' organization of the arguments in their motion to dismiss.

[3] AR 740 is the Nevada Department of Corrections Administrative Regulation governing inmate grievance procedures, updated in November 2018.  Available at
http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2074 0%20-%20Inmate%20Grievance%20Procedure%20-%2011.20.2018.pdf.

- Count I(b): denial of access to the courts due to restrictions on access to public records against Sandoval and Cegavski.
- Count I(c): denial of access to the courts due to refusal to copy evidence against Jennifer Nash and Jaques Graham.
- Count I(d): denial of access to the courts due to fraudulent conduct to defeat Peck's attempts at exhaustion against Nash, Perry Russell, Troy Ternes, and Graham.
- Count I(e): denial of access to the courts based on reduction in law library time against Graham.
- Count II(a): due process violation for conducting disciplinary hearings against Peck based on false statements against Duane Wilson, Williams, Russell, Graham, Alexis Lozano, Sanon Ennis-Wright (Wright), and Joel Queroz.
- Count II(b): retaliation against Williams, Nash, Graham, Wilson, Julie Matousek, Russell, Wright, and Queroz, for bringing false disciplinary charges against Peck and giving other inmates more legal access in retaliation for filing grievances and lawsuits.
- Count III: denial of access to the courts against Nash and Graham for refusing to allow Peck to research case law for his case, CV-13-00580.[4]
- Count V(a): equal protection violation against Sandoval, Cegavski, Laxalt, Dzurenda, and Williams, for allowing units 9-12 to have non-functioning emergency medical call buttons when similarly situated inmates have functioning emergency medical call buttons.
- Count V(b): Eighth Amendment violation against Sandoval, Cegavski, Laxalt, Dzurenda, and Williams for being deliberately indifferent to the safety risk of not having working emergency call buttons.
- Count VI: denial of access to the courts against Laxalt and Dzurenda for failing to provide, or withholding, adequate scientific research materials.
- Count VII(a): Eighth Amendment violation against Wilson for failing to provide Peck with his approved medical diet.
- Count VII(b): retaliation against Wilson for failing to provide Peck with his medical diet in retaliation for filing grievances on the matter.
- Count VIII(a): equal protection against Dzurenda, Williams, Russell, Nash, Matousek, Graham, Wilson, and Dugan[5] for promulgating or implementing AR 516 Level System[6] that denies him adequate yard, tier, and gym access.

---

[4] It is unclear what case Peck is referring to as he does not have a civil case in this district with that case number.

[5] Peck identifies the defendants for this claim at ECF No. 86. Dugan is identified by only his last name and position as a Sergeant. The parties should identify his first name and move to amend the caption.

[6] AR 516 describes the inmate level system and how to qualify for certain levels, including privileges that may be used as incentives. Available at http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2051 6%20-%2006 1712.pdf.

- Count VIII(b): due process violation against Dzurenda, Williams, Russell, Nash, Matousek, Graham, Wilson, and Dugan for promulgating or implementing AR 516 Level System that denies him adequate yard, tier, and gym access.
- Count VIII(c): retaliation for using excessive lockdowns with no warnings against Dzurenda, Williams, Russell, Nash, Matousek, Graham, Wilson, and Dugan.
- Count IX(a): due process violation against Monique Hubbard-Pickett (Pickett), Russell, Ternes, and Nash for fraudulently rejecting grievances to frustrate exhaustion.
- Count IX(b): denial of access to the courts against Pickett, Russell, Ternes, and Nash for rejecting grievances to frustrate exhaustion.
- Count X(a): Eighth Amendment violation against Francis Moka and Alfonso Alvarez for being deliberately indifferent to the safety risk of not having working emergency call buttons.
- Count X(b): equal protection violation against Moka and Alvarez for allowing units 9-12 to have non-functioning emergency medical call buttons when similarly situated inmates have functioning emergency medical call buttons.

ECF Nos. 6, 65. The defendants move to dismiss Peck's claims. Peck opposes the motion and moves for leave to file a motion for a preliminary injunction and restraining order based on "ongoing retaliation and harassment" and the injuries already described in his amended complaint. ECF Nos. 123, 125. Because the facts of this case are detailed in the two prior screening orders, I will repeat them here only where necessary. For the reasons set out below, I grant the defendants' motion to dismiss, and deny Peck's motions.

# I. ANALYSIS

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a

formulaic recitation of the elements of a cause of action." *Id.* at 555.  If I dismiss the complaint, I should grant leave to amend even if no request to amend is made "unless [I] determine[] that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).  *Pro se* complaints are to be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling on a qualified immunity defense, I consider whether the evidence, viewed in the light most favorable to the plaintiff, shows the defendant's conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  If so, I then determine whether the right was clearly established. *Id.*  I may perform this two-step inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted).  The plaintiff need not identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*  I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If a genuine issue of material fact prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003).

**A.  Denial of Access to the Courts Claims**

Inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This right, however, "guarantees no particular methodology but rather the conferral of a capability— the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356.  It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356-57.

To bring a claim, an inmate must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Id.* at 349.  An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.  Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362.  The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and actions under 42 U.S.C. § 1983. *Id.* at 353 n.3, 354-55.

The defendants argue that Peck fails to allege an actual injury in his access to court claims because he does not allege that either a non-frivolous claim was dismissed or he was prevented from filing one in court due to the defendants' interference. ECF. No. 106 at 7-8. They move to dismiss the access to court claims in Counts I, III, VI, and IX. *Id.*  Peck responds

1 that the defendants' interference resulted in "stolen judgements" in other cases. ECF No. 113 at

2 6. He also argues that he need not identify at the pleading stage what lawsuits were impeded due

3 to the defendants' conduct. *Id.* Peck argues that he alleged actual injuries, such as his inability to

4 research DNA or patent law, his inability to garner a defense at his criminal trial, and that case

5 A-16-743859 was dismissed because the defendants tampered with his exhibits and failed to

6 copy them. *Id.* at 7-12.[7]

7        1. Count I

8      In his amended complaint, Peck alleges that AR 740 restricts his ability to bring all the

9 claims he wishes to pursue in civil rights and habeas litigation because he can grieve only one

10 issue per week and there are 30-day limitations periods for tort and civil rights claims. ECF No.

11 40 at 9-10.[8] He alleges that he must choose between multiple grievable issues, which denies him

12 access to bring civil rights claims before they are time-barred. *Id.* at 10 (describing an instance

13 where Peck had several grievable issues but allegedly was forced to choose which right to

14 pursue). He also alleges that Sandoval signed a bill prohibiting inmates from accessing public

15 records, so he did not have materials necessary for litigation in his state and federal habeas

16 petitions. *Id.* at 11. Peck alleges the defendants refuse to copy evidence against themselves and

17 declarations by other inmates, frustrating the exhaustion process, and are trained to defeat

18 exhaustion through fraud. *Id.* at 9, 11.

19

20 [7] Peck adds allegations that were not included in his amended complaint. When ruling on a motion to dismiss, I generally may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP*,

21 476 F.3d 756, 763 (9th Cir. 2007). Accordingly, I consider only the allegations in Peck's amended complaint.

22 [8] AR 740 states that an inmate "may not file more than one (1) grievance per seven (7) day

23 week" unless a grievance alleges sexual abuse or it is an emergency that involves health or safety claims. *See* AR 740, at 4. Further, inmates have six months to file an informal grievance for civil rights and tort claims. *Id.* at 10.

Peck fails to allege facts describing the underlying causes of action that were purportedly hampered by the defendants' conduct. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). While Peck refers generally to "stolen judgments" and states he had pending habeas petitions, he does not describe the underlying claims in those cases or whether they were dismissed or negatively impacted by the defendants' conduct. Peck also does not allege facts to demonstrate that his underlying claims were non-frivolous. Accordingly, Peck fails to plausibly allege a denial of access to courts claim in Count I.

The defendants argue that even if Peck could plausibly allege a claim, they are entitled to qualified immunity on Count I(a) (AR 740's restrictions), Count I(b) (access to public records), and Count I(e) (reduction of law library time). I agree, except as to Count I(e). Peck has not identified clearly established law that would have put the defendants on notice that following AR 740's grievance procedure, which may restrict an inmate's ability to file as many grievances as he chooses, would violate Peck's right to access the courts. Further, Peck challenges a bill that restricts an inmate's access to public records, but he has not identified clearly established law that inmates are entitled to access public records or that the lack of access would violate an inmate's right to access the courts. However, the defendants were on notice that an inmate may seek relief when he is denied meaningful access to the courts if he can demonstrate that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a claim." *Lewis*, 518 U.S. at 351. Accordingly, the defendants are not entitled to qualified immunity on Peck's allegation that they reduced his law library time by 50%.

In addition, Peck may be able to assert facts to demonstrate an actual injury with respect to his claims against the defendants for refusing to copy evidence (Count I(c)), fraudulently acting to defeat Peck's attempts at exhaustion (Count I(d)), and reducing his law library time (Count I(e)). If Peck chooses to file a second amended complaint, he must set forth facts describing, for example, that he missed a filing deadline for a particular claim, was time-barred from pursuing a specific claim, or was otherwise unable to access the court on an underlying non-frivolous claim because of the defendants' actions. He also must allege facts demonstrating that the defendants did not act for legitimate penological reasons. Accordingly, I dismiss Counts I(a) and (b) with prejudice, and Counts I(c), (d), and (e) without prejudice.

### 2. Count III

Peck alleges that the defendants refused to provide him with caselaw for case CV-13-00580. ECF No. 40 at 14. It is unclear what case Peck is referring to as he does not have a civil case in this district with that case number. Further, Peck does not identify the underlying cause of action or the status of that case. He does not allege that he missed a filing deadline, that the case was dismissed, or that he was otherwise unable to pursue a non-frivolous claim because he was not provided with case law (and he also fails to describe what case law he was looking for or how it would have helped him with his claim). Accordingly, I dismiss Count III without prejudice.

### 3. Count VI

Peck alleges that Laxalt and Dzurenda failed to provide, or withheld, adequate scientific research materials, which prevented him from raising issues supported by scientific evidence in his habeas case now pending in federal court. ECF No. 40 at 18. He provides no details on the pending case or what purported issues and defenses he wanted to, but could not, raise because of

his inability to access research materials.  Because he has not alleged an actual injury, I dismiss Count VI without prejudice.[9]

### 4. Count IX(b)

Peck alleges that Pickett, Russell, Ternes, and Nash rejected grievances for false reasons to "delay, impede, frustrate grievances from becoming exhausted" as an "improper intent to frustrate civil litigation." ECF No. 40 at 21.  However, he does not plausibly allege an actual injury because he provides no information about whether he had an outstanding civil case, or instead was hoping to pursue a civil case, and what the underlying claims are or would be.  I dismiss this portion of Count IX without prejudice.

**B. Retaliation Claims**

Inmates have a First Amendment right to file prison grievances and to pursue civil rights litigation in court. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  To state a First Amendment retaliation claim, Peck must show: "(1) [a]n assertion that a state actor took some adverse action against [him] (2) because of (3) [his] protected conduct, and that such action (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.  To prevail, Peck must show that his protected conduct was the substantial or motivating factor behind the defendants' conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).  "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

---

[9] For similar reasons described in Count I(e), the defendants are not entitled to qualified immunity because Peck is alleging a shortcoming with HDSP's library or legal assistance program that hindered his ability to access the courts.

The defendants argue that Peck fails to establish that his grievance activity was the substantial or motivating factor behind the defendants' conduct of allegedly bringing false disciplinary charges against him. ECF No. 106 at 10.  They also argue that Peck cannot establish that Wilson retaliated against him by not providing him a medical diet after Peck filed grievances about food. *Id.* at 13.  They argue that Peck does not allege he was singled out for retaliatory treatment from other inmates receiving the medical diet, instead alleging that staff granted his food grievances. *Id.*  And they contend he does not allege that Wilson was aware of his grievance activity. *Id.*  Finally, the defendants argue that Peck fails to allege a connection between the "lockdowns with no warnings" and protected grievance activity or that any defendant was aware of his grievance activity. *Id.* at 16.

Peck responds that the defendants retaliated against him by submitting false disciplinary charges, one of which landed him in solitary confinement for 15 days. ECF No. 113 at 16.  He argues that those charges were either dismissed or he was found not guilty. *Id.*  He also argues that the defendants had personal knowledge of many grievances. *Id.*  Peck argues that Wilson submitted a false disciplinary charge against him for filing a grievance about Wilson, where he stated Wilson should be fired. *Id.* at 22.  And he argues that the punitive lockdowns in addition to disciplinary sanctions are evidence of retaliation. *Id.* at 26-28.

### 1. Count II(b)

Peck alleges that Williams upheld retaliatory OIC #423470,[10] Nash and Graham caused retaliatory OIC #408880, Wilson falsely wrote OIC #416942, Graham falsely wrote OIC #419330, and Ennis and Queroz falsely wrote OIC #436405. ECF No. 40 at 12.  Peck alleges that he was found not guilty of several of these disciplinary violations. *Id.*  And he alleges that

---

[10] OIC's are disciplinary violations. *See* ECF Nos. 106 at 9; 40 at 12.

1 Graham is retaliating against him by providing other inmates with more legal access than him.

2 *Id.*  Finally, Peck alleges that Russell fraudulently "killed" several grievances to frustrate his

3 ability to litigate his claims and to intimidate him. *Id.* at 13.

4       Peck has plausibly alleged an adverse action taken against him without a legitimate

5 penological reason by alleging several instances of false disciplinary charges against him. *See*

6 *Watison*, 668 F.3d at 1115 (finding that Watison "pleaded arbitrary, capricious, and retaliatory

7 conduct in pleading that (a) Rodriguez filed a *false* disciplinary complaint against him and

8 (b) Carter made *false* statements to the parole board") (emphasis in original).  However, Peck

9 fails to allege "a causal connection between the adverse action and the protected conduct." *Id.* at

10 1114.  Peck alleges generally that he engaged in protected activity by filing grievances and

11 pursuing litigation, but he does not describe any specific instance of engaging in protected

12 conduct that resulted in retaliation.  Peck provides no chronology of events that would lead to an

13 inference that, shortly after engaging in protected activity, the defendants took adverse actions

14 against him.  Instead he alleges that the disciplinary system itself is used as a tool for retaliation

15 and that all defendants are involved in this fraudulent system. *See* ECF No. 40 at 12 (alleging

16 that the level system is used as a retaliatory tool).  This conclusory and generalized allegation is

17 insufficient to state a retaliation claim.  However, Peck may be able to plead facts alleging that

18 the defendants submitted false disciplinary violations in retaliation after he filed a grievance

19 against them or because he pursued litigation against them.  I therefore dismiss this portion of

20 Count II without prejudice.

21       2. Count VII(b)

22       Peck fails to state a retaliation claim against Wilson.  Peck alleges only that Wilson does

23 not provide him with his approved medical diet even though he submitted grievances on the

matter that were approved. ECF No. 40 at 19.  He does not allege that Wilson's behavior

constitutes chilling conduct, is connected to his filing grievances about his medical diet, or that

Wilson's behavior lacks a penological justification.  In his response to the defendants' motion to

dismiss, Peck adds new allegations that Wilson was retaliating against him for writing a

grievance stating that Wilson should be fired.  While this information may support a causal

connection between Wilson's conduct and Peck's protected activity, I can look only at the facts

pleaded in the amended complaint to decide this motion.  Based on the facts alleged in the

amended complaint, Peck has not plausibly alleged that Wilson retaliated against him by failing

to provide him an adequate medical diet.  Accordingly, I dismiss this portion of Count VII

without prejudice.

### 3. Count VIII(c)

Peck alleges that the excessive lockdowns and loss of yard and tier time are used as

retaliation against level 3 inmates. ECF No. 40 at 20.  He alleges no facts demonstrating that he

engaged in any protected activity or that the lockdowns were used to retaliate against him

individually.  Instead, he alleges that "the entire system" is a discriminatory and retaliatory tool.

*Id.*  Peck cannot plausibly allege that HDSP's policy of level wide lockdowns or restrictions in

yard or tier time is used as retaliation against him for engaging in protected activity.  Further, he

cannot plausibly allege that the level wide lockdowns are not for legitimate penological reasons

that impact a specific population of inmates, as opposed to one individual.  Accordingly, I

dismiss this portion of Count VIII with prejudice.

### C.  Due Process Claims

To state a procedural due process claim, a plaintiff must first establish the existence of a

liberty or property interest for which protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487

(1995).  A liberty interest may arise from the Constitution or from state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2006).  An inmate has a liberty interest in avoiding restrictive conditions of confinement when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

When an inmate in state custody faces a disciplinary proceeding that may result in the loss of good-time credits or similar infringements on the inmate's liberty interest, procedural due process requires that the inmate receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985).

The defendants argue that the falsification of a disciplinary charge is not sufficient to state a due process claim. ECF No. 106 at 9.  They argue that because restricted yard and tier time are common to all protective custody inmates at HDSP, Peck fails to allege that he is experiencing an atypical and significant hardship. *Id.* at 15.  They also argue that Peck does not allege that his classification impacted the duration of his sentence. *Id.*  The defendants argue that Peck's due process claim against Pickett, Russell, Ternes, and Nash for fraudulently rejecting grievances to frustrate exhaustion should not have passed screening because the court relied on a prior screening order's analysis which was about access to courts, not due process. *Id.* at 16. And they argue they are entitled to qualified immunity.

Peck responds that intentionally obstructing an inmate's right to seek redress through the grievance process is a procedural due process violation. ECF No. 113 at 14.  He argues that he

never received a hearing when he was classified as a level 3 inmate and that he does not receive the same yard, gym, and tier time as other protective custody inmates in other units. *Id.* at 24.  He argues that lack of programing will impact the duration of his sentence. *Id.* at 25.  And he argues that his claim about fraudulent grievances should be screened rather than dismissed. *Id.* at 29.

### 1. Count II(a)

Peck alleges that the defendants wrote or upheld false disciplinary charges against him, resulting in him having to spend 15 days in solitary confinement. ECF No. 40 at 12.  He also alleges that these charges negatively impacted his ability to get parole. *Id.*   Based on his amended complaint, Peck alleges two deprivations: solitary confinement and the possibility of parole.

In *Sandin*, the Court found that an inmate had no liberty interest protecting against a 30-day disciplinary segregation because it "[did] not present a dramatic departure from the basic conditions of Conner's indeterminate sentence." 515 U.S. at 485.  And while there is no clear baseline for when segregation rises to the level of an atypical and significant hardship, courts have provided guidance on the matter. *See e.g., Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (finding Ohio's maximum security facility, where almost all human contact is prohibited, light is on for 24 hours, exercise is limited to 1 hour per day, and placement at the facility is indefinite, imposed an atypical and significant hardship); *Brown v. Oregon Dept. of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014) (inmate's 27-month solitary confinement in Oregon's intensive management unit without periodic, meaningful review of his status imposed an atypical and significant hardship on him).

Peck's allegations do not appear to establish an atypical or significant hardship because his case resembles the inmate's situation in *Sandin.*[11]  However, even if Peck could demonstrate a protected liberty interest, the defendants would be entitled to qualified immunity because Peck has not identified clearly established law that would have put the defendants on notice that they could not discipline Peck with 15 days of solitary confinement.

Additionally, Nevada's statutory parole scheme "expressly disclaims any intent to create a liberty interest" and inmates therefore have no liberty interest in the discretionary grant of parole or in eligibility for parole. *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010) (citing Nev. Rev. Stat. § 213. 10705); *see also Woods v. Nev. Dept. of Corr.*, No. 2:19-cv-00723-APG-DJA, 2020 WL 137391, at *3 (D. Nev. Jan. 13, 2020) (analyzing precedent to determine that Nevada inmates have no liberty interest in parole).  Because Peck cannot plausibly allege a liberty interest in parole, and because the defendants are entitled to qualified immunity as to Peck's claim involving a 15-day segregation, I dismiss Count II(a) with prejudice.

### 2. Count VIII(b)

Peck alleges that the defendants "either created, promulgated, [or] implemented operation of AR 516 Level System in closed custody protective segregation that is double punishment for disciplinary action." ECF No. 40 at 20.  Plaintiff asserts that his classification under AR 516 denies him the right to adequate yard, tier, and gym access. *Id.*  However, Peck fails to plausibly allege a protected liberty interest, and therefore a due process claim, because inmates have no liberty interest in their classification status. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).  This claim is similar to Peck's due process claim in Count II that was dismissed in the screening

---

[11] Peck also fails to allege what process was due that he did not receive.  Rather, he states that he was found not guilty of several of the false disciplinary charges, suggesting that HDSP has procedures in place to ensure that inmates are not disciplined arbitrarily.

1  order. *See* ECF No. 6 at 13.  Accordingly, I dismiss this portion of Count VIII with prejudice as

2  amendment would be futile.

3          3. Count IX(a)

4          Peck alleges that that the defendants are being trained to improperly reject grievances in

5  order to frustrate exhaustion and his ability to file civil cases. ECF No. 40 at 21.  However, he

6  fails to plausibly allege any constitutionally protected liberty interest.  Instead, his claim is more

7  appropriately identified as an access to courts claim, which I have analyzed above. *See, e.g.,*

8  *Rhodes*, 408 F.3d at 567 (noting "[e]ven where conditions of confinement do not implicate a

9  prisoner's due process rights, inmates retain other protection from arbitrary state action" by

10  invoking the First and Eighth Amendments, for example) (internal quotation omitted).

11  Accordingly, I dismiss this portion of Count IX with prejudice.

12      **D.  Equal Protection Claims**

13          The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that

14  all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne*

15  *Living Ctr.*, 473 U.S. 432, 439 (1985).  There are two types of equal protection claims.  First, a

16  plaintiff can that the defendants acted with the intent and purpose to discriminate against him

17  based on his membership in a protected class. *Lee v. City of L.A.*, 250 F.3d 668,687 (9th Cir.

18  2001).  Alternatively, a plaintiff can allege that the defendants intentionally treated him

19  differently than similarly situated individuals without a rational basis for the difference in

20  treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized

21  successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she

22  has been intentionally treated differently from others similarly situated and that there is no

23  rational basis for the difference in treatment.").

16

Peck alleges two different equal protection claims. In Counts V(a) and X(b),[12] he alleges that inmates in HDSP units 9-12, where he lives, have non-functioning emergency medical call buttons while other similarly situated inmates in units 1-8 and at other Nevada prisons have functioning call buttons. ECF No. 40 at 17. In Count VIII(a), Peck alleges that his level classification in protective custody deprives him of adequate yard and tier time that other inmates receive. *Id.* at 20. The defendants argue that Peck's claims fail because prisoners are not a protected class and he does not allege that a fundamental right is being infringed or that he was treated differently than other similarly situated inmates without a rational basis. ECF No. 106 at 11, 14. They also argue they are entitled to qualified immunity. *Id* at 21-22.

Peck has failed to plausibly allege an equal protection claim. He has not plausibly alleged that he is a member of a protected class because inmates are generally not considered a suspect class. *See Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1994) (noting, in case where prison camp inmates argue they were treated differently from correctional institution inmates, that inmates are not members of a suspect class). And Peck has not plausibly alleged that he is being treated differently than similarly situated individuals. The problems with the medical buttons are alleged to impact several units, so his "class of one" claim fails. The same applies to his allegations based on his protective custody classification, which necessarily imposes similar restrictions on yard and tier time to all inmates in that classification level. Accordingly, I dismiss Peck's equal protection claims with prejudice as amendment would be futile.

/ / / /

/ / / /

---

[12] Count V(a) and X(b) are the same, except that Peck adds two defendants, Moka and Alvarez, for Count X(b).

### E.  Deliberate Indifference Claims

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to serious medical needs of" an inmate. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To prevail on a deliberate indifference claim, a plaintiff must show that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," but the test remains a subjective one. *Id.* at 842.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation and citation omitted).

In Count VII(a), Peck alleges that Wilson failed to provide him with his medical diet, which left his lipid levels "extremely high." ECF No. 40 at 19.  In Count V(b), Peck alleges that the defendants are deliberately indifferent to the serious risk of harm by not having working emergency medical call buttons which causes "people to die." *Id.* at 17.  He also alleges in Count X(a) that Moka failed to answer his call button when he had a seizure and that another officer told Peck that Moka does not answer call buttons because he does not care. *Id.* at 20.  And he alleges that he "tested" his emergency button twice in one day and Alvarez did not answer. *Id.*

The defendants argue that Peck fails to allege that any defendant was personally aware of a risk of serious harm or that Peck had a life-threatening medical condition that required the use of an emergency medical button. ECF No. 106 at 12.  They argue that Peck states a "generalized risk" common to all inmates, which they contend is insufficient to state a claim. *Id.*  They also

1  argue that Peck's allegations against Moka and Alvarez that they failed to answer when he

2  pressed his call button amounts at most to negligence. *Id.*  And they argue that Peck has not

3  plausibly alleged that Wilson was personally aware of his high lipid levels or that he informed

4  Wilson of his adverse health condition, so Peck fails to allege that Wilson was aware of a serious

5  risk to Peck's health. *Id.* at 13.

6         As to Count VII(a), the denial of a medically necessary diet may support a claim for

7  deliberate indifference if an inmate can show that the defendants purposefully withheld his

8  dietary accommodation and knew it could result in serious harm to the inmate's health. *See e.g.*,

9  *Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th Cir. 1994) (inmate taken off diabetic diet with

10 prior history of heart attack and a bypass operation could state a claim for deliberate

11 indifference).  However, Peck fails to plausibly allege a deliberate indifference claim against

12 Wilson.  Peck states only that he should be given an approved medical diet but does not explain

13 what the diet requires or why he needs it.  Therefore, it is hard to determine whether the "cheap

14 substitutes" violate the terms of Peck's diet or whether Peck instead has concerns with the

15 prison's choices of food.  Even if Peck were to have alleged that he was denied a medical diet, he

16 does not allege that his diet resulted in serious harm.  Nor does he allege that Wilson knew of his

17 high lipid levels and was deliberately indifferent to that risk when he denied Peck his diet.

18 However, Peck may be able to cure these defects with amendment, so I dismiss this count

19 without prejudice.

20        With respect to Count V(b), Peck has not plausibly alleged that the defendants acted with

21 deliberate indifference when they failed to fix broken emergency call buttons.  Peck has not

22 alleged that any specific harm resulted from not having working call buttons.  While he does

23 allege in conclusory fashion that people die from not having emergency buttons, he has

19

presented no facts to support an assertion that the defendants were aware that non-functioning emergency call buttons could result in serious harm or death. *See* ECF No. 40 at 17 (Peck alleging that a compliance officer stated that the broken buttons were not life-threatening and deemed a capital improvement project). By Peck's own allegations, the defendants were unaware of any life-threatening risk of harm. And Peck has not plausibly alleged that the defendants should have been aware of a risk of serious harm. Accordingly, I dismiss this count without prejudice.

As for Count X(a), Peck's allegation that he tested his call button while Alvarez was on duty and Alvarez did not respond cannot support a deliberate indifference claim because Peck was in no real risk of serious harm. And while Peck's allegations against Moka are more substantial to support a deliberate indifference claim, his claim still fails because he has not alleged that Moka knew Peck was having a seizure or other serious medical problem and failed to respond. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."). Accordingly, I dismiss this count against Moka without prejudice and against Alvarez with prejudice.

**F. Eleventh Amendment**

The defendants argue that I should dismiss Peck's claims for money damages against the official-capacity defendants. States and entities that are considered "arms of the State for Eleventh Amendment purposes" are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70 (1989) (quotations omitted). Because a suit against a state official in his official capacity is equivalent to a suit against the state itself, the Eleventh

1  Amendment bars suits against state officials in their official capacities. *Id.* at 70-71.

2  Additionally, Nevada has not waived its Eleventh Amendment immunity. *O'Connor v. State of*

3  *Nev.*, 686 F.2d 749, 750 (9th Cir. 1982); Nev. Rev. Stat. § 41.031(3).  Thus, I grant the

4  defendants' motion as to Peck's claims for monetary damages against them in their official

5  capacities.

6      **G. Injunctive Relief**

7      The defendants argue that Peck fails to specify the type of declaratory or injunctive relief

8  he seeks, so his request for such relief should be dismissed as impermissibly vague. ECF No. 106

9  at 17.  They argue that without this information, they "are unable to determine whether there is a

10 basis for injunctive or declaratory relief or otherwise prepare their defense." *Id.*  Peck responds

11 that he seeks a declaration that the defendants violated his constitutional rights and that he has

12 met the requirements for an injunction. ECF No. 113 at 32-23.

13     To obtain an injunction, a plaintiff must show "(1) that [he] has suffered an irreparable

14 injury; (2) that remedies available at law, such as monetary damages, are inadequate to

15 compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

16 and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

17 disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

18 (2006).  And under the Prison Litigation Reform Act, I "shall not grant or approve any

19 prospective relief unless . . . such relief is narrowly drawn, extends no further than necessary to

20 correct the violation of the Federal right, and is the least intrusive means necessary to correct the

21 violation of the Federal right." 18 U.S.C. § 3626a(1)(A).

22     While I have dismissed all of Peck's claims, Peck may file an amended complaint to cure

23 deficiencies in the claims that I dismissed without prejudice and he may seek injunctive relief on

21

those claims.  Accordingly, I deny as moot the defendants' motion to dismiss Peck's request for injunctive relief.

### H.  Peck's Motions

Peck has filed two motions requesting permission to file a motion for preliminary injunction and temporary restraining order. ECF No. 123, 125.  He also requests that I rule on the pending motions. ECF No. 129.  Because I have dismissed Peck's claims and ruled on the pending motions, I deny Peck's motions as moot.

## II.  CONCLUSION

I THEREFORE ORDER that plaintiff Frank Peck's motions **(ECF Nos. 123, 125, 129) are DENIED as moot.**

I FURTHER ORDER that the defendants' motion to dismiss **(ECF No. 106) is GRANTED.**

The following claims are dismissed with prejudice: Count I(a) and (b); Count II(a); Count V(a) and (b), Count VIII(a), (b), and (c); Count IX(a); Count X(a) against defendant Alvarez; and Count X(b).

The following claims are dismissed without prejudice: Count I(c), (d), and (e); Count II(b); Count III; Count VI; Count VII(a) and (b); Count IX(b); and Count X(a) against defendant Moka.

I FURTHER ORDER that by **June 15, 2020**, Peck may file a second amended complaint to cure the deficiencies identified in this order **with respect to the claims that have been dismissed without prejudice**.  I remind Peck that he should file a second amended complaint

/ / / /

only if he has additional facts to support his claims.  He may not use this as an opportunity to bring new claims or merely repeat the allegations already presented.

DATED this 13th day of May, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

23