# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FRANK M. PECK,

      Plaintiff

v.

STATE OF NEVADA, et al.,

      Defendants

Case No.: 2:18-cv-00237-APG-VCF

**Order**

[ECF Nos. 142, 176, 188]

Plaintiff Frank M. Peck is an inmate in the custody of the Nevada Department of Corrections and currently incarcerated at High Desert State Prison (HDSP).  The court screened Peck's complaint and amended complaint, and allowed the following causes of action to proceed:

- Count I(a): denial of access to the courts due to restrictions in Administrative Regulation (AR) 740[1] against Brian Sandoval, Barbara Cegavski, Adam Laxalt, James Dzurenda, and Brian Williams.
- Count I(b): denial of access to the courts due to restrictions on access to public records against Sandoval and Cegavski.
- Count I(c): denial of access to the courts due to refusal to copy evidence against Jennifer Nash and Jaques Graham.
- Count I(d): denial of access to the courts due to fraudulent conduct to defeat Peck's attempts at exhaustion against Nash, Perry Russell, Troy Ternes, and Graham.
- Count I(e): denial of access to the courts based on reduction in law library time against Graham.
- Count II(a): due process violation for conducting disciplinary hearings against Peck based on false statements against Duane Wilson, Williams, Russell, Graham, Alexis Lozano, Shanon Ennis-Wright (Wright), and Joel Quiroz.
- Count II(b): retaliation against Williams, Nash, Graham, Wilson, Julie Matousek, Russell, Wright, and Quiroz, for bringing false disciplinary charges against Peck and giving other inmates more legal access in retaliation for filing grievances and lawsuits.

---

[1] AR 740 is the Nevada Department of Corrections Administrative Regulation governing inmate grievance procedures, updated in November 2018.  It is available at http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%2074 0%20-%20Inmate%20Grievance%20Procedure%20-%2011.20.2018.pdf.

- Count III: denial of access to the courts against Nash and Graham for refusing to allow Peck to research case law for his case, CV-13-00580.
- Count V(a): equal protection violation against Sandoval, Cegavski, Laxalt, Dzurenda, and Williams, for allowing units 9-12 to have non-functioning emergency medical call buttons when similarly situated inmates have functioning emergency medical call buttons.
- Count V(b): Eighth Amendment violation against Sandoval, Cegavski, Laxalt, Dzurenda, and Williams for being deliberately indifferent to the safety risk of not having working emergency call buttons.
- Count VI: denial of access to the courts against Laxalt and Dzurenda for failing to provide, or withholding, adequate scientific research materials.
- Count VII(a): Eighth Amendment violation against Wilson for failing to provide Peck with his approved medical diet.
- Count VII(b): retaliation against Wilson for failing to provide Peck with his medical diet in retaliation for filing grievances on the matter.
- Count VIII(a): equal protection violation against Dzurenda, Williams, Russell, Nash, Matousek, Graham, Wilson, and Dugan for promulgating or implementing AR 516 Level System[2] that denies him adequate yard, tier, and gym access.
- Count VIII(b): due process violation against Dzurenda, Williams, Russell, Nash, Matousek, Graham, Wilson, and Dugan for promulgating or implementing AR 516 Level System that denies him adequate yard, tier, and gym access.
- Count VIII(c): retaliation for using excessive lockdowns with no warnings against Dzurenda, Williams, Russell, Nash, Matousek, Graham, Wilson, and Dugan.
- Count IX(a): due process violation against Monique Hubbard-Pickett (Pickett), Russell, Ternes, and Nash for fraudulently rejecting grievances to frustrate exhaustion.
- Count IX(b): denial of access to the courts against Pickett, Russell, Ternes, and Nash for rejecting grievances to frustrate exhaustion.
- Count X(a): Eighth Amendment violation against Francis Moka and Alfonso Alvarez for being deliberately indifferent to the safety risk of not having working emergency call buttons.
- Count X(b): equal protection violation against Moka and Alvarez for allowing units 9-12 to have non-functioning emergency medical call buttons when similarly situated inmates have functioning emergency medical call buttons.

ECF Nos. 6, 65.  The defendants moved to dismiss Peck's claims, and I granted that motion with leave for Peck to amend as directed in the order. ECF Nos. 106, 130.

---

[2] AR 516 describes the inmate level system and how to qualify for certain levels, including privileges that may be used as incentives. Available at http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20516%20-%20061712.pdf.

1　　　Peck thereafter filed his second amended complaint (SAC). ECF No. 139.  The

2　defendants moved to dismiss all the claims in the SAC on a variety of grounds. ECF No. 142.

3　After nearly a year of extensions, Peck filed his opposition to the motion to dismiss. ECF No.

4　186.  Before he filed his opposition, Peck filed a motion for meaningful law library access,

5　which the defendants opposed. ECF Nos. 176, 177.

6　　　Magistrate Judge Ferenbach issued a report in which he recommended that I grant the

7　defendants' motion to dismiss. ECF No. 188.  He interpreted Peck's motion for meaningful

8　library access as a preliminary injunction motion and recommended that I deny that motion. *Id.*

9　Finally, he *sua sponte* recommended that I deem Peck a vexatious litigant. *Id.*  Peck objected to

10　each of these recommendations. ECF No. 189.  The defendants did not file a response to Peck's

11　objections.

12　**I.  MOTION FOR MEANINGFUL LAW LIBRARY ACCESS**

13　　　Peck moved for meaningful law library access, arguing that he had no physical access to

14　the law library and had difficulty getting the attention of the correctional officer to submit law

15　library requests. ECF No. 176.  The defendants opposed, arguing that Peck was essentially

16　seeking injunctive relief requiring he be allowed to have physical access to the law library. ECF

17　No. 177.  The defendants argued that Peck had not shown a likelihood of success on the merits

18　because his motion conceded that HDSP staff collect law library requests, so he has access to

19　legal materials.  The defendants also noted that Peck did not inform the court of what requests he

20　had filed with the library or when he had done so, or stated that any request had gone unfulfilled.

21　Nor had he explained how the lack of materials prevented him from opposing the motion to

22　dismiss.  The defendants presented evidence in support of their response showing that Peck had

23　made only a few requests and that each had been answered. ECF No. 177-1.

1    Peck filed a reply in which he contended he has repeatedly requested the case *Winter v.*

2  *Nat. Res. Def. Council, Inc.* but has not received it. ECF No. 179 at 2.  He also contended that he

3  requested the Nevada Revised Statutes (NRS) section on recusal of judges and received a

4  response that no such NRS existed.  He asserted this shows that the law library staff is not

5  sufficiently trained to respond to requests.  He argued that this lack of access has prevented him

6  from reviewing the cases cited by the defendants in their motion to dismiss, from filing a new

7  lawsuit related to alleged deliberate indifference to his medical needs, or from litigating

8  unrelated cases.

9    Peck attached several exhibits to his reply.  The first was an advertisement for

10  publications, one of which was for a document Peck wrote. Id. at 13.  The advertisement refers to

11  the "COVID scamdemic," although that is not what Peck's article is about. *Id.*  Rather, Peck's

12  article concerns DNA testing through the Polymerase Chain Reaction method and provides his

13  position that this method results in fabricated evidence in criminal cases. *Id.* at 14-22.  The

14  second exhibit was a request for legal copy work in which Peck requested the NRS for recusal of

15  a state court judge. *Id.* at 24.  The third exhibit was a request for Nevada Assembly Bill 241. *Id.*

16  at 28.

17    Judge Ferenbach construed Peck's motion as one for injunctive relief and recommended

18  that I deny it because Peck's own allegations show he had access to the library through a runner

19  and had nearly a year to respond to the motion to dismiss, but he did not show any request that

20  went unanswered or that he suffered any injury from delays related to the law library.[3] ECF No.

21

22  [3] Judge Ferenbach also concluded that the motion for meaningful library access was a bad faith
     delay tactic and that exhibit 1 to Peck's reply brief shows Peck is litigating in bad faith. ECF No.

23  188 at 20-21.  Peck objects to these findings, arguing that he litigates in good faith and that he
     did not write the part of the advertisement that refers to COVID as being a "scamdemic." ECF
     No. 189.  Peck's article does not relate to COVID and does not refer to it as a "scamdemic."  I do

188.  Peck objected, arguing that he has had "zero access to the law library." ECF No. 189 at 24.

He also argued that if law library access had been adequate, he would have discovered his theory

about the admissibility of DNA in relation to his original criminal trial sooner.  He contended

that his requests for caselaw regarding the citations in the defendants' motion have gone missing.

To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of

success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the

plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 20 (2008).  Alternatively, under the sliding scale approach, the plaintiff must demonstrate

(1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of

hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All.*

*for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Additionally, in the context of a civil action challenging prison conditions, injunctive

relief "must be narrowly drawn, extend no further than necessary to correct the harm the court

finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."

18 U.S.C. § 3626(a)(2).  I must give "substantial weight to any adverse impact on public safety

or the operation of a criminal justice system caused by the preliminary relief and . . . respect the

principles of comity set out" in § 3626(a)(1)(B). *Id.*  A preliminary injunction is "an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)

(quotation and emphasis omitted).

---

not consider Peck as the author of the "scamdemic" comment for purposes of resolving the
pending motions, recommendation, and objection.

1    Reviewing Magistrate Judge Ferenbach's ruling de novo, I overrule Peck's objection and

2 deny his motion. *See* LR IB 3-2(b). Peck has not shown a likelihood of success on the merits.

3 Although Peck claims he has had no access to the law library, the defendants have presented

4 contrary evidence that Peck does not refute. He does not provide any evidence that he requested

5 the cases cited in the defendants' motion and received no response or an inadequate response.

6 Instead, he refers to matters in other lawsuits. Additionally, Peck was given nearly a year to

7 respond to the defendants' motion to dismiss. He has not shown that despite the many

8 extensions, he could not obtain the authority he was seeking even if legal requests were limited

9 to once a week through a runner. I therefore deny his motion.

10 **II.  MOTION TO DISMISS**

11    I previously dismissed some of Peck's claims without prejudice, explained what each

12 claim was lacking, and granted Peck leave to amend to cure the identified deficiencies. ECF No.

13 130. Peck thereafter filed the SAC. The defendants moved to dismiss, arguing that Peck added

14 new claims without permission and did not solve the identified pleading deficiencies of the prior

15 complaint. They also argue they are entitled to qualified immunity. Magistrate Judge Ferenbach

16 recommended dismissal of all claims. Peck objected.[4]

17    In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken

18 as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v.*

19 *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). However, I do not assume the truth

20 of legal conclusions merely because they are cast in the form of factual allegations. *See Clegg v.*

21

22

23

---

[4] Peck asserts new facts in his objection that do not appear in the SAC. I do not consider those allegations because they are not in the SAC. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (stating that additional facts contained in an opposition to a motion to dismiss "cannot be considered because they were not included in the operative pleading").

*Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  If I dismiss the complaint, I should grant leave to amend even if no request to amend is made "unless [I] determine[] that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quotation omitted).  *Pro se* complaints are to be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling on a qualified immunity defense, I consider whether the evidence, viewed in the light most favorable to the plaintiff, shows the defendant's conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  If so, I then determine whether the right was clearly established. *Id*.  I may perform this two-step inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (simplified).  The plaintiff need not identify a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* I make this second inquiry "in light of the specific context of the case, not as a broad general

1  proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If a genuine issue of material fact

2  exists that prevents a determination of qualified immunity at summary judgment, the case must

3  proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003).

4      **A. Conspiracy Claims**

5      The SAC includes conspiracy allegations.  The defendants moved to dismiss any

6  conspiracy claims because I did not give Peck leave to add these claims.  Magistrate Judge

7  Ferenbach recommended that I dismiss the conspiracy allegations because I gave Peck leave to

8  amend only as to those claims that I dismissed without prejudice.  He also noted that I denied

9  Peck's motion for reconsideration regarding the conspiracy claims.  Peck objected, arguing that

10  the defendants' conspiracy to reject grievances to prevent prisoners from exhausting

11  administrative remedies, thereby derailing litigation against the defendants, thwarts the entire

12  grievance process.

13      On de novo review, I agree with Judge Ferenbach that I did not give Peck leave to amend

14  to add conspiracy claims.  In my order on dismissal, I allowed Peck to amend "to cure the

15  deficiencies identified in this order **with respect to the claims that have been dismissed**

16  **without prejudice**." ECF No. 130 at 22 (emphasis in original).  I advised Peck that he "may not

17  use this as an opportunity to bring new claims or merely repeat allegations already presented."

18  *Id.* at 23.  I did not grant leave to amend with respect to any conspiracy allegations.

19      Peck thereafter sought reconsideration, arguing that I failed to address conspiracy

20  allegations in four of his claims. ECF No. 131.  I denied that motion because Peck had "not

21  identified any allegations in the complaint that sufficiently allege a conspiracy claim that I did

22  not previously address in my two screening orders." ECF No. 137.  Because Peck did not have

23  leave to amend to add conspiracy claims, I dismiss those allegations in the SAC.

### B.  Denial of Access to the Courts Claims

Inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This right, however, "guarantees no particular methodology but rather the conferral of a capability— the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356.  It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356-57.

To bring a claim, an inmate must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Id.* at 349.  An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.  Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362.  The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and actions under 42 U.S.C. § 1983. *Id.* at 353 n.3, 354-55.

Judge Ferenbach recommended that all of Peck's denial of access claims be dismissed with prejudice because none of Peck's claims fell within the right of access to the courts, Peck alleged no actual injury, and no clearly established law put the defendants on notice that the types of claims Peck was pursuing would fall within the right to access the courts. ECF No. 188

at 9-10.  Peck objected, arguing that one of the cases at issue was his criminal trial at which he

represented himself. ECF No. 189 at 7-8.  Peck contends that he thus was entitled to law library

access, including scientific articles if "science is used against" the pro se criminal defendant. *Id.*

at 7.  He also contended his civil cases should qualify for protection under the right of access to

the courts. *Id.* at 8.  And he suggested that he was going to file a habeas petition but could not

because Graham would not copy a transcript from another court case. *Id.* at 9.  Peck argued that

he would have obtained injunctive relief in *Peck v. Dorsey*, 2:19-cv-01023-SAB, and he had

counsel appointed for him against his wishes in *Peck v. Williams*, 2:17-cv-01620-JAD-VCF, to

which he eventually conceded because he would not be able to access the courts on his own. *Id.*

at 10.  Finally, he contended he was forced to withdraw Ninth Circuit appeal number 20-15333.

*Id.*

I overrule Peck's objections because none of his claims is plausibly based on actual

injury arising from a denial of access for a non-frivolous direct criminal appeal, habeas corpus

proceeding, or action under 42 U.S.C. § 1983.  As set forth in Judge Ferenbach's report, some of

the cases Peck mentions are civil lawsuits. *See* ECF No. 188 at 11-13.  Civil lawsuits that are not

§ 1983 actions do not fall within the right to access the courts, and Peck does not point to any

clearly established law that they do.  The defendants therefore are entitled to summary judgment

on the merits and on qualified immunity for these aspects of Peck's claims.  Additionally, as

Judge Ferenbach explained in his report, Peck does not plausibly allege an injury in relation to

some of those suits. *Id.* at 12.

In addition to various civil suits, Peck refers to his original criminal trial where he

represented himself.  Even if the right of access to the courts encompasses a pro se criminal

defendant who chooses to represent himself at trial, Peck has not identified clearly established

law that would have put the defendants on notice that failing to stock the prison library with scientific materials regarding DNA would amount to a denial of this right to a criminal defendant who represents himself at trial.  Because Peck cannot point to any such clearly established law for the right of access, the defendants are entitled to qualified immunity on this aspect of Peck's claims.

As for *Peck v. Williams*, Peck admits that he has appointed counsel in that case (albeit over his initial objection).  He therefore has not plausibly alleged a denial of meaningful access to the courts in relation to this habeas action because he has able counsel to assist him. *See Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981) ("Appointed counsel, whether state or court provided, offers a meaningful, and certainly the best, avenue of access to an indigent inmate."); *see also Bounds*, 430 U.S. at 828 (holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law").  And although Peck contends he had to drop his appeal in that case (No. 20-15333) because he was denied meaningful access, Peck stated in an affidavit attached to a motion to voluntarily dismiss the appeal that he had "determined it [was] in [his] best interest to allow the Federal Public Defender's Office to represent him." *Peck v. Williams*, No. 20-15333, Dkt. No. 14 at 4.

Peck also refers to contemplated litigation under 42 U.S.C. § 1983 and habeas corpus that may come within the right to access the courts, but he does not plausibly allege facts to support those claims as non-frivolous or allege how he was denied the ability to file them.  For example, Peck alleges that he was denied a transcript in another case that references the average dying age of inmates in Nevada. ECF No. 139 at 9.  Peck alleges that this prevented him from raising a

1  double jeopardy or cruel and unusual punishment claim. *Id.*  But Peck does not allege or explain

2  how the average age of death for Nevada inmates would support a non-frivolous habeas or

3  § 1983 claim on either double jeopardy or Eighth Amendment grounds.

4      He also mentions a potential § 1983 claim based on general population inmates

5  contaminating the food of protective custody inmates. ECF No. 139-1 at 99.  He asserts he was

6  prevented from filing claims about this because Graham confiscated and destroyed inmate

7  declarations that would have supported that claim. *Id.*  But as Judge Ferenbach notes, Peck did

8  not allege that he was harmed by any incident involving poisoned or contaminated food. ECF

9  No. 188 at 13.  In his objection, Peck contends that he was subjected to food contamination in

10  one instance where his pudding was adulterated with detergent. ECF No. 189 at 16.  These

11  allegations are not in the SAC, so I cannot consider them.  But even if I did, Peck alleges he was

12  retaliated against by being brought to the infirmary 10 days after the incident. *Id.*  It is unclear

13  why Peck believes being taken to the infirmary for observation was retaliatory.  Additionally,

14  being taken to the infirmary has no bearing on a right of access claim.  Peck makes the

15  conclusory statement that he was "thwarted in his efforts to file on this event." *Id.*  But he does

16  not explain how or by whom.

17      Peck also asserts that he was denied the opportunity to argue on habeas review of his

18  criminal conviction that the entire NRS is void *ab initio*.  But Peck has not plausibly alleged that

19  this claim is non-frivolous or that he suffered actual injury because the Nevada courts have

20  repeatedly rejected these and similar arguments, including in a case brought by Peck in which he

21  raised the same arguments. *See Peck v. State*, No. 72849, 133 Nev. 1059, 2017 WL 6547415

22

23

1  (Nev. Ct. App. Dec. 14, 2017); Dkt. No. 17-23824 at 5-6.[5]  Consequently, I dismiss Peck's

2  denial of access claims with prejudice because amendment would be futile and because Peck has

3  had multiple opportunities to amend already. *See Zucco Partners, LLC v. Digimarc Corp.*, 552

4  F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009).

5      **C.  Retaliation Claims**

6          Inmates have a First Amendment right to file prison grievances and to pursue civil rights

7  litigation in court. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  To state a First

8  Amendment retaliation claim, Peck must show: "(1) [a]n assertion that a state actor took some

9  adverse action against [him] (2) because of (3) [his] protected conduct, and that such action

10  (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably

11  advance a legitimate correctional goal." *Id.* at 567-68.  To prevail, Peck must show that his

12  protected conduct was the substantial or motivating factor behind the defendants' conduct.

13  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).  "Because direct evidence of retaliatory

14  intent rarely can be pleaded in a complaint, allegation of a chronology of events from which

15  retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108,

16  1114 (9th Cir. 2012).

17      1. Count II(b)

18          In his prior complaint, Peck alleged that Williams upheld retaliatory OIC #423470,[6] Nash

19  and Graham caused retaliatory OIC #408880, Wilson falsely wrote OIC #416942, Graham

20

---

21  [5] *See, e.g.*, *Ignacio v. State*, No. 64716, 130 Nev. 1191, 2014 WL 1430920, at *1 n.2 (Nev. Apr.
10, 2014); *Olson v. State*, No. 72337, 133 Nev. 1058, 2017 WL 4619241, at *1 (Nev. Ct. App.
22  Oct. 11, 2017); *Burgess v. State*, No. 60265, 381 P.3d 597, 2012 WL 5835122, at *1 (Nev. Nov.
15, 2012); *England v. State*, No. 55844, 367 P.3d 766, 2010 WL 3554366, at *1 (Nev. Sept. 10,
23  2010).

[6] OIC's are disciplinary violations. *See* ECF Nos. 106 at 9; 40 at 12.

falsely wrote OIC #419330, and Ennis and Quiroz falsely wrote OIC #436405.  He alleged that he was found not guilty of several of these disciplinary violations, that Graham was retaliating against him by providing other inmates with greater legal access than him, and that Russell fraudulently denied several grievances to frustrate his ability to litigate his claims.

In my prior dismissal order, I concluded that Peck had plausibly alleged an adverse action taken against him without a legitimate penological reason by alleging several instances of false disciplinary charges against him. ECF No. 130 at 11.  However, Peck had failed to allege a causal connection between the adverse actions and his protected activities because he did not identify specific instances of protected conduct that resulted in retaliation and gave no chronology that could suggest a causal connection. *Id.*  So, I dismissed with leave to amend. *Id.*

The defendants moved to dismiss the SAC's retaliation allegations because the alleged retaliation is based on Judge Wiese visiting the prison, yet all but one of the OICs were issued before Judge Wiese's visit, so they could not have been motivated by retaliation.  As for OIC 436405, the defendants argued that Peck does not adequately allege that Quiroz was motivated by Peck's pursuit of the lawsuit that led to Judge Wiese's visit because there is no allegation that Quiroz knew of the state court matter at the time he wrote the OIC, or that Judge Wiese's visit negatively impacted HDSP, Quiroz, or any other defendant.  Alternatively, they asserted Quiroz is entitled to qualified immunity because he did not violate Peck's First Amendment rights.

Judge Ferenbach recommended that I dismiss this claim because four of the five disciplinary charges were issued prior to Judge Wiese's October 11, 2017 visit to HDSP. ECF No. 188 at 14.  Judge Ferenbach recommended that I dismiss Peck's retaliation claim based on OIC 436405 (which was issued after the visit) because Peck did not plausibly allege a retaliatory

1  motive where there were no factual allegations that Quiroz was a defendant in the litigation that

2  generated Judge Wiese's visit or that he even knew about it. *Id.* at 15.

3      Peck objected, arguing that he has long been subject to retaliation for his litigation

4  activity.  He contends that another HDSP staff member must have told Quiroz about Peck's

5  lawsuit because Quiroz mentioned the lawsuit but Peck never told Quiroz about it.  He argues

6  that a retaliatory motive should be inferred because the charges against him were false.

7      In the SAC, Peck alleges that his protected activity was filing *Peck v. NDOC*, case

8  number A-16-743859-C, that resulted in Judge Wiese visiting HDSP on October 11, 2017. ECF

9  No. 139 at 12.  He alleges the judge's visit was "big news" at HDSP. *Id.*

10              *a.  OICs 408880, 41692, and 419330*

11      Peck filed A-16-743859-C on June 2, 2016.[7]  Peck does not allege when the defendants

12  were served or otherwise became aware of this lawsuit.  A review of the state court docket shows

13  that the earliest date any defendant was served was November 16, 2016.  Consequently, Peck has

14  not and cannot plausibly allege that OIC 408880 (dated June 5, 2016) or OIC 41692 (dated

15  November 8, 2016) were in retaliation for Peck filing the A-16-743859-C lawsuit because there

16  is no plausible allegation that the defendants were aware of Peck's protected activity at the time

17  these OICs were issued. ECF No. 142-3 at 2-3.[8]

18      OIC 419330 was written by non-defendant Murray on December 27, 2016. ECF No. 142-

19  3 at 6.  The charge states that Peck went to the library when he was not on the list to go to the

20

---

21  [7] I "may take judicial notice of matters of public record without converting a motion to dismiss
    into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.

22  2001) (quotation omitted).

23  [8] I can consider the OICs provided by the defendants because the SAC's retaliation claims refer
    to the OICs, they are central to the retaliation claims, and Peck does not question their
    authenticity. *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

1 library and Matousek told him he had to leave. *Id.*  Peck "got loud" and "pushed past" Murray,

2 and Graham subsequently asked to have Peck removed from the library. *Id.*  Peck was removed

3 "without further incident." *Id.*  The timing of this charge is close in time to when at least some of

4 the defendants in A-16-743859-C were served, thus potentially raising the inference of

5 knowledge and a retaliatory motive.  However, the charge was related to Peck's interaction with

6 Murray, who is not a defendant in this action and there is no plausible allegation that Murray

7 knew about the A-16-743859-C lawsuit.  Additionally, although Peck alleges that he was

8 actually on the list to go to the library, he does not plausibly allege the lack of a legitimate

9 penological interest in writing Peck up for his conduct in the library.  I therefore dismiss his

10 retaliation claim based on these OICs with prejudice.

11         *b.  OIC 436405*

12    Based on the docket in A-16-743859-C, Judge Wiese was originally scheduled to attend a

13 hearing and informal settlement conference at HDSP on September 20, 2017, but that was moved

14 to October 11, 2017.  The parties did not settle the matter.

15    Quiroz wrote OIC 436405 on December 7, 2017. ECF No. 142-3 at 8.  The charge was

16 based on Peck refusing to move from one unit to another. *Id.*  According to the charge, "Peck

17 stated he refused to move because he is on a lawsuit with the state about the level system." *Id.*

18 Peck alleges that he did not refuse to move, and that Quiroz did not personally tell him to move

19 to another cell. ECF No. 139 at 16.  He alleges that he was on the phone with someone from the

20 attorney general's office at the time Quiroz contends he was talking to Peck, so Quiroz lied about

21 the incident. *Id.*

22

23

1    Taking Peck's allegations as true, as I must at this stage of the proceedings, and

2    considering the OIC that the defendants attached to their motion as incorporated in the SAC,[9]

3    Quiroz allegedly linked a false charge against Peck with Peck's protected litigation activity, and

4    that plausibly raises an inference of a retaliatory motive.  It is plausible that false disciplinary

5    charges would chill a person of ordinary firmness.  And if the charge was false as Peck alleges,

6    then he has also plausibly alleged a lack of a legitimate correctional goal.  Finally, Quiroz

7    contends that he is entitled to qualified immunity, but that argument is based solely on the

8    defendants' position that Peck has not plausibly alleged a First Amendment retaliation claim.  I

9    therefore modify the report and recommendation to allow this claim to proceed against Quiroz.

10            *c.  OIC 423470*

11    On December 8, 2017, Judge Wiese dismissed Peck's remaining claims in A-16-743859-

12    C.  About three and a half months later, Russell wrote OIC 423470. ECF No. 142-3 at 4-5.  Peck

13    alleges that Russell was not authorized to write this grievance under AR 740 because only the

14    deputy director is allowed to write an infraction for abuse of the grievance process. ECF No. 139

15    at 12, 17.  The timing does not support an inference of retaliation, particularly given that Judge

16    Wiese had already dismissed all of Peck's claims in A-16-743859-C.  Peck does not plausibly

17    identify any other protected activity or basis for Russell to retaliate other than Peck's general

18    allegation that he is known for writing grievances.  That is insufficient to support a retaliation

19    claim against Russell.  I therefore dismiss this claim with prejudice because Peck has had several

20    opportunities to plausibly state this claim and he has been unable to do so.

21    / / / /

22

---

23    [9] Peck did not articulate in the SAC that Quiroz referred to the lawsuit in the context of this
allegedly false OIC.  But the defendants requested that I review the OICs in their motion to
dismiss as incorporated in the SAC and Quiroz refers to Peck's lawsuit in the OIC.

## 2. Count VII(b)

In Count VII(b), Peck attempted to allege a retaliation claim against Wilson based on Wilson allegedly not providing him with his approved medical diet even though his grievances on the matter were approved. I dismissed this claim without prejudice because Peck did not allege that Wilson's behavior constituted chilling conduct, that it was connected to Peck filing grievances about his medical diet, or that Wilson's behavior lacked a penological justification. ECF No. 130 at 11-12.

The defendants argued that this claim still fails to allege a causal connection to protected activity because there is no allegation that Wilson knew of any alleged grievances, that Wilson issued the false disciplinary charges as a result, or that Wilson refused to provide the medical diet after he met with Peck on July 11, 2018. Alternatively, they asserted that Wilson is entitled to qualified immunity because he did not violate Peck's First Amendment rights.

Judge Ferenbach recommended that I dismiss this claim because Peck did not plausibly allege that he engaged in protected conduct, that the protected activity was the motivating factor for the denial of the diet or the false charges, or that Wilson refused to provide the diet after the two met on July 11, 2018. ECF No. 188 at 16.

Peck objected, arguing that he personally notified Wilson of his diet on July 11, 2018. He also argued that he filed a grievance against Wilson on November 1, 2016, and in response, Wilson wrote a false disciplinary charge against Peck for which Peck was found not guilty.

Peck has not alleged that Wilson denied him a medical diet after the two met on July 11, 2018. He also has not alleged that Wilson learned that Peck was on a medical diet prior to this date, when Peck engaged in protected activity, or when Wilson subsequently denied that diet. I

therefore dismiss this portion of his retaliation claim against Wilson.  I dismiss with prejudice

because Peck has had multiple opportunities to plausibly state this claim.

However, Peck has plausibly alleged that Wilson retaliated against him for filing a

grievance related to his sack lunch.  In OIC 416492, Wilson states that he received a grievance

from Peck on November 1, 2016. ECF No. 142-3 at 3.  Ten days later, Wilson filed OIC 416492

against Peck, claiming Peck threatened him in the grievance form. *Id.*  The timing supports an

inference of retaliation.  Additionally, Peck characterizes this OIC as being "false" and states he

was found not guilty, which I liberally construe to mean that Peck alleges he did not threaten

Wilson. ECF No. 139 at 15-17.  Peck thus plausibly alleges Wilson did not have a legitimate

penological purpose in writing him up for threats he did not make.  It is plausible that a false

charge that a prisoner threatened staff would chill a person of ordinary firmness.  Finally, Wilson

contends that he is entitled to qualified immunity, but that argument is based solely on the

defendants' position that Peck has not plausibly alleged a First Amendment retaliation claim.  I

therefore modify the report and recommendation to allow this claim to proceed.

**D.  Deliberate Indifference Claims**

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to

serious medical needs of" an inmate. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To prevail on

a deliberate indifference claim, a plaintiff must show that the "official knows of and disregards

an excessive risk to inmate health or safety; the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[A] factfinder may conclude that

a prison official knew of a substantial risk from the very fact that the risk was obvious," but the

test remains a subjective one. *Id.* at 842.  "Prison officials are deliberately indifferent to a

1  prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical

2  treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation and citation

3  omitted).

4         1.  Count VII(a)

5        In Count VII(a) of his prior complaint, Peck alleged that Wilson failed to provide him

6  with his medical diet, resulting in high lipid levels.  The denial of a medically necessary diet may

7  support a claim for deliberate indifference if an inmate can show that the defendants purposefully

8  withheld his dietary accommodation and knew it could result in serious harm to the inmate's

9  health. *See e.g.*, *Sellers v. Henman*, 41 F.3d 1100, 1102-03 (7th Cir. 1994) (inmate taken off

10  diabetic diet with prior history of heart attack and a bypass operation could state a claim for

11  deliberate indifference).  I dismissed this claim because Peck failed to plausibly allege what the

12  diet requires, why he needs it, that the provision of cheap substitutes resulted in serious harm, or

13  that Wilson knew of Peck's high lipid levels and was deliberately indifferent to that risk when he

14  denied Peck's diet. ECF No. 130 at 19.

15        The defendants argued this claim fails because there are no allegations that Peck told

16  Wilson that an NDOC provider had prescribed a medical diet under AR 626 to treat a serious

17  medical condition.  The defendants also contended that the SAC does not adequately describe the

18  alleged dietary restrictions, so there are no plausible allegations that serving bologna would

19  violate the diet.  And the defendants again argued that there is no evidence that Wilson refused to

20  provide the diet after he met with Peck on July 11, 2018.  Alternatively, they argued that Wilson

21  is entitled to qualified immunity.

22        Judge Ferenbach recommended that I dismiss this claim because Peck does not allege

23  that Wilson knew Peck had high lipid levels and was deliberately indifferent to a serious risk to

Peck when he denied Peck's diet. ECF No. 188 at 17.  Judge Ferenbach also noted that Peck did not allege that he had informed Wilson that he had been prescribed a medical diet by a medical provider to treat a serious medical condition or that the diet had to be free of bologna. *Id.*

Peck objected, arguing that a medical diet is prescribed only for serious medical needs, so Wilson must have been aware of the serious nature of medical diets.  He asserted that Wilson was aware of Peck's need for a diet low in fat, cholesterol, and sodium.  He thus contends the risk of serious harm in not following the prescribed diet is obvious.

Peck alleges that Wilson fed Peck bologna for 10 years, causing Peck high blood pressure and other medical conditions. ECF No. 139 at 15.  Peck also alleges that despite the "approved menu," Wilson served bologna instead of roast beef, turkey, or chicken. *Id.*  Peck states in conclusory fashion that Wilson continued in this conduct "after duly being noticed." *Id.*  Peck states he personally informed Wilson of his medical conditions in a meeting on July 11, 2018. *Id.*  But he does not allege that Wilson thereafter refused to follow the medical diet.

Peck does not plausibly allege that his medical diet precluded serving bologna or required serving roast beef, turkey, or chicken.  Peck also does not allege that Wilson continued to serve him bologna after the July 11, 2018 meeting at which Peck informed Wilson of his medical conditions.  Peck thus does not plausibly allege that Wilson was deliberately indifferent to Peck's serious medical need.  Consequently, I dismiss this claim with prejudice because Peck has had multiple opportunities to plausibly plead this claim.

2.  Count X(a)

In Count X(a), Peck alleged that Moka failed to answer his call button when he had a seizure.  He also alleged that another officer told him that Moka does not answer call buttons

because Moka does not care.  I dismissed Count X(a) because Peck did not allege that Moka

knew Peck was having a seizure or other serious medical problem and failed to respond.

The defendants argue that count X(a) should be dismissed because there are no

allegations that Peck suffered a seizure that required medical attention while Moka was on duty,

that Moka knew Peck required medical attention and failed to respond, or that Peck used the call

button to request emergency medical help and Moka refused to respond.

Judge Ferenbach recommended that I dismiss this claim because Peck did not allege he

suffered an injury where there is no allegation that he experienced a seizure while Moka was on

duty or that Peck tried to use the emergency button to notify Moka and Moka failed to respond.

ECF No. 188 at 17-18.  Peck objected, arguing that he had a seizure during the relevant time

period, as set forth in exhibit 13 to the SAC, and he could have a seizure at any time.  He argues

that Moka is indifferent to answering the call button, which may be pushed for medical

emergencies.

In the SAC, Peck alleges that more than two years prior to July 23, 2020, he told Moka

that he had a seizure disorder and asked why Moka refused to answer the call button. ECF No.

139 at 19.  Moka allegedly responded that he does not have time to answer call buttons. *Id.*  Peck

attaches as an exhibit to the SAC a declaration from his cellmate at HDSP, Shawn Flynn, who

avers that on November 19, 2019, Peck was overdosed on his seizure medication and needed

emergency medical assistance. ECF No. 139-1 at 95.[10]  According to Flynn, Peck twice used the

emergency button, but Moka refused to answer. *Id.*

---

[10] District of Nevada General Order No. 2021-05 requires that a complaint or amended complaint "must sufficiently state the facts and claims without reference to exhibits or affidavits."  Because this General Order was not in place at the time that Peck filed the SAC, I liberally construe Peck's allegations to include this exhibit.

1       Peck therefore has plausibly alleged that Moka knew Peck suffered from a seizure

2 disorder when Peck suffered a serious medical episode related to his seizure disorder for which

3 he used the call button to call for medical assistance, but Moka did not respond.  Peck has

4 adequately alleged that Moka knew of the risk but disregarded it by choosing not to answer

5 Peck's call.  I therefore modify the report and recommendation to allow this claim to proceed.

6 **III.  VEXATIOUS LITIGANT**

7       Magistrate Judge Ferenbach sua sponte recommended that I deem Peck a vexatious

8 litigant under the court's inherent power and dismiss the SAC with prejudice because Peck has

9 filed numerous cases in this court that the court has dismissed for either failure to state a claim or

10 as duplicative.  Additionally, he notes that Peck has been restricted in his filings in another case.

11 Peck also has filed numerous state court actions.  Judge Ferenbach noted that Peck has engaged

12 in vexatious conduct in this case, including realleging conspiracy claims without leave of the

13 court, attempting to add claims and defendants without leave of the court, and relying on

14 frivolous and delusional arguments in relation to his motion for meaningful law library access.

15 Judge Ferenbach thus recommended that Peck must seek leave prior to filing a new lawsuit

16 unless Peck's proposed complaint in another action alleges that he is under imminent danger of

17 serious physical injury.

18       Peck objects, arguing that he only brings litigation in good faith, and that he did not make

19 frivolous or delusional arguments in relation to his motion.  He also contends that the number of

20 cases he has filed should be considered in context of his incarceration over 26 years.  He also

21 denies that two of the cases Judge Ferenbach identified are his (*Peck v. Haley* and *Peck v.*

22 *Bryan*), and another was a habeas petition filed twice in error.  He asserts that he does not abuse

23

the judicial process because he typically pays the filing fee to proceed with his claims.  He contends that his various cases and filings should be viewed liberally because he is pro se.

Judge Ferenbach set forth the law regarding vexatious litigants, so I do not repeat it here. As discussed in footnote 3 above, I do not attribute the "scamdemic" comments to Peck.  He denies that he authored those comments and the article that he admits he wrote has nothing to do with COVID.  I therefore do not accept that portion of Judge Ferenbach's reasoning for deeming Peck vexatious.  However, Peck amended to add claims and allegations that he did not have leave to add.  But that alone would not support a finding of vexatiousness, so I examine the twelve cases Judge Ferenbach identified as the basis for his recommendation.

**1.  Peck v. Dorsey et al., 2:19-cv-01023-SAB.**  This case was dismissed with prejudice in a screening order for a variety of reasons, including judicial immunity.

**2.  Peck v. Washoe County et al., 3:09-cv-00381-LRH-VPC.**  This case proceeded to summary judgment.

**3.  Peck v. Haley et al., 3:11-cv-00018-LRH-VPC.**  This case was dismissed at screening for failure to state a claim.  Peck denies this lawsuit was filed by him.  However, the lawsuit is brought by "Frank M. Peck," and alleges that Robert Lindsay was appointed as his counsel in criminal case CR-06-2580. 3:11-cv-00018-LRH-VPC, ECF No. 1-2.  Peck identifies this same case as his criminal trial in the SAC in this case. ECF No. 139 at 13.

**4.  Peck et al. v. Bryan et al., 3:77-cv-00221-ECR-RAM.**  Peck denies that this lawsuit is attributable to him.  However, it appears that in February 2006, Peck filed a motion to "Restore/Appoint Federal Monitors" in this case. 3:77-cv-00221-ECR-RAM, ECF No. 819. That motion was stricken because the case had been closed for over 10 years. 3:77-cv-00221-ECR-RAM, ECF No. 821.  Two other requests were received in this case in 2006 from persons

other than Peck inquiring about whether a settlement agreement in the case was still in effect. 3:77-cv-00221-ECF-RAM, ECF Nos. 822, 823.

**5. Peck v. Second Judicial District Court et al., 3:09-cv-00382-LRH-VPC.** Peck voluntarily dismissed this case after the court denied his request for leave to proceed in forma pauperis for failure to include a financial certificate.

**6. Peck v. State of Nevada et al., 2:12-cv-00898-JCM-NJK.** One of Peck's claims survived screening and this case was resolved by settlement. Peck subsequently refused to sign the settlement agreement, but the agreement was enforced. The parties thereafter stipulated to dismiss the case.

**7. Peck v. Cox et al., 2:12-cv-01495-JAD-PAL.** Some of Peck's claims survived screening but the defendants prevailed at summary judgment, largely on mootness grounds. Peck moved for reconsideration. Judge Dorsey concluded that "Peck failed to act in good faith in the course of this briefing and the prosecution of his claims." 2:12-cv-01495-JAD-PAL, ECF No. 119 at 3.

**8. Peck v. Nevin et al., 2:13-cv-00782-GMN-CWH.** Peck's complaint was dismissed for failure to state a claim.

**9. Peck v. Williams, 2:17-cv-01620-JAD-VCF.** This is Peck's habeas case that is still pending in which he is now represented by counsel. Judge Dorsey restricted Peck from filing motions on his own behalf in that case because he continued to do so even after counsel was appointed. 2:17-cv-01620-JAD-VCF, ECF No. 50. As noted above, Peck has since dropped his objections to being represented by appointed counsel and counsel has recently filed Peck's third amended petition.

**10. Peck v. Minev et al., 2:21-cv-01865-APG-EJY.**  I dismissed Peck's complaint with leave to amend.  This case remains pending.

**11. Peck v. Warden Neven, 2:05-cv-01158-RLH-PAL.**  This habeas petition was denied on the merits.

**12. Peck v. Warden Neven, 2:05-cv-01186-KJD-RJJ.**  This case was dismissed as duplicative of 2:05-cv-01158-RLH-PAL.

Of the twelve cases, three were dismissed for failure to state a claim and two involve findings that Peck was not acting in good faith or was acting vexatiously.  The others either proceeded to the merits, settled, were voluntarily dismissed, were dismissed as duplicative, or remain pending.  Thus, Peck has not had an "inordinate" number of frivolous or harassing cases, although he has had prior findings of bad faith and vexatious conduct. *Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1064 (9th Cir. 2014) (quotation omitted).  Peck has engaged in some vexatious conduct in this case too, including (1) amending to add claims and parties without the court's leave and (2) being less than candid about the reason he withdrew his appeal in number 20-15333 and about his participation in some of the identified litigation.

However, it would be too harsh of a remedy at this stage to require that Peck seek leave prior to filing any new lawsuits unless his complaint alleges that he is under imminent danger of serious physical injury. *Id.* at 1062 ("In light of the seriousness of restricting litigants' access to the courts, pre-filing orders should be a remedy of last resort.").  Instead, I will not allow Peck to amend his complaint any further in this case and I admonish him to not engage in the type of conduct that Judge Ferenbach and I have identified.  I believe that is narrowly tailored and sufficient to deter Peck from further vexatious conduct and to protect the court and other parties.

26

1 *Id.* at 1064 (stating that "courts should consider whether other, less restrictive options, are

2 adequate to protect the court and parties").

3 **IV.  CONCLUSION**

4      I THEREFORE ORDER that Magistrate Judge Ferenbach's report and recommendation

5 **(ECF No. 188) is accepted in part and modified in part** as follows:

6      ● The defendants' motion to dismiss **(ECF No. 142) is GRANTED in part**.  All of

7 plaintiff Frank M. Peck's claims in the second amended complaint are dismissed with prejudice

8 except for count II(b) against defendant Quiroz based on OIC 436405; count VII(b) against

9 Wilson based on OIC 416492; and count X(a) against Moka based on his alleged refusal to

10 answer the call button.

11      ● Plaintiff Frank M. Peck's motion for meaningful law library access **(ECF No. 176) is**

12 **DENIED**.

13      ● Plaintiff Frank M. Peck is precluded from further amending his claims in this case.

14      DATED this 19th day of March, 2022.

15

16                           ANDREW P. GORDON

17                           UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23