UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FRANK PECK, | Case No.: 2:18-cv-00237-APG-MDC |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment** |
| v. | |
| STATE OF NEVADA, et al., | [ECF No. 218] |
| Defendants | |

Plaintiff Frank Peck, an inmate at High Desert State Prison (HDSP), sues defendants Duane Wilson, an HDSP Food Service Manager III, and Joel Quiroz, an HDSP correctional officer, for retaliating against Peck by filing false disciplinary charges. Peck also sues defendant Francis Moka, an HDSP correctional officer, for exhibiting deliberate indifference to Peck's serious medical need by not responding when Peck pushed an emergency call button. Peck brings these claims under 42 U.S.C. § 1983.

The defendants move for summary judgment, contending that Peck did not exhaust all available administrative remedies as required by the Prison Litigation Reform Act (PLRA) for any of his remaining claims. Peck responds that he exhausted all available administrative remedies because HDSP's grievance process was effectively unavailable to him. I grant the motion for summary judgment. Peck did not exhaust HDSP's available administrative remedies because he did not file timely grievances and appeals for any of his claims.

**I.      Legal Standard**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted). The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

## II. Analysis

### a. *Duane Wilson*

Duane Wilson is a Food Services Manager III at HDSP. ECF No. 218-1 at 2. On November 1, 2016, he received a grievance from Peck complaining about a problem with Peck's sack lunch. ECF No. 218-2 at 2. On the grievance form, Peck initially wrote "Fire Dale Jones" then crossed out "Dale Jones" and wrote Duane Wilson. *Id.* Over 15 years ago Dale Jones was a Food Service Manager III who was badly beaten by an inmate at Ely State Prison, where Peck was formerly held. *Id.* Wilson interpreted Peck's reference to Jones as a threat, and on November 8, 2016 he filed Offense in Custody (OIC) charge #416942 against Peck for threatening his personal safety. *Id.* On December 13, 2016, Peck was found not guilty at a disciplinary hearing. ECF 218-2 at 4-7.

One year later, on December 18, 2017, Peck filed an informal grievance against Wilson, calling OIC #416942 a "false, malicious disciplinary" action that "precluded consideration by the Pardons Board." ECF No. 218-5 at 14. His grievance was returned to him citing the need for an administrative claim form to be attached because Peck requested monetary compensation. *Id.* at

13. On February 15, 2018, Peck filed a second informal grievance on the same issue with the proper administrative claim form attached. *Id.* at 7-10.  This grievance was also rejected, stating both that Peck's failure to write the date on his grievance meant he abandoned his claim, and that Peck's grievance was untimely because OIC #416942 was completed on December 13, 2016, the day of the disciplinary hearing. *Id.* at 6.  On April 23, 2018, Peck filed a third informal grievance stating he did not abandon his claim and arguing that the filing window should begin when his pardon was denied, so his grievance was timely. *Id.* at 5.  Again, this grievance was denied, stating that Peck lacked standing as he had not "factually demonstrated loss or harm," nor "provided any proof that his Pardons Board denial was directly or indirectly related to OIC 416942." *Id.* at 2.  The response said that Peck's alleged injury was a non-grievable issue because no inmate had a right to be considered by the Pardons Board. *Id.*  Because this was Peck's third time submitting an informal grievance on this issue and his grievances were rejected all three times, Peck's grievance could no longer be resubmitted. *Id.*  Peck did not appeal this decision through HDSP's grievance appeal process.

Peck sues Wilson for violating his First Amendment rights, alleging that Wilson filed OIC #416942 against him in retaliation for grievances Peck filed against Wilson for failing to follow Peck's medical diet.  Peck also alleges Wilson wanted to deter him from writing more grievances against him as Peck is "literally famous for his grievances . . . and pursu[ing] lawsuits." ECF No. 139 at 18 (simplified).

Wilson argues Peck did not exhaust the administrative remedies available to him because his grievance was untimely under Nevada Department of Corrections' Administrative Regulation (AR) 740, which requires prisoners to file grievances within six months of the prisoner's injury. ECF No. 218-6 at 6.  Wilson argues Peck filed his grievance over a year after his disciplinary

hearing, and because the grievance was untimely, Peck did not properly exhaust all available administrative remedies.

Peck responds that HDSP's grievance procedure was unavailable for him because:

- All grievances are rejected so the grievance procedure cannot offer inmates remedies;
- AR 740, which regulates the grievance process, is unconstitutional;
- All grievances disappear;
- Grievances are not answered by prison officials within the 45-day period prescribed by AR 740;
- The grievance procedure is so complex and complicated that the average inmate cannot navigate it;
- AR 740 cannot usurp state and federal statutes of limitations;
- Grievances cannot be appealed;
- Informal grievances are improperly rejected for not including a remedy; and
- Grievance forms are not available in Peck's unit.

For these reasons, Peck argues that he exhausted all available administrative remedies even though he did not file a timely grievance.

Peck's grievance, filed over a year after his disciplinary hearing, was not timely and thus did not properly exhaust HDSP's administrative remedies. Inmates must comply "with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91. Peck has not raised a genuine dispute that HDSP's grievance procedure was effectively unavailable to him. First, Peck claims HDSP staff always deny grievances, but in his response to Wilson's motion Peck includes a grievance prison staff upheld in 2017. ECF No. 249 at 77. Peck also includes grievances that were denied, but where prison officials took steps seeking to remedy Peck's issues nonetheless. *See, e.g. id.* at 192 (referencing culinary staff visit to Peck's cell to discuss his medical diet); 194 (informing staff of Peck's medical diet complaints so they could ensure he received the correct items). These examples contradict Peck's assertion that staff always deny grievances.

Next, Peck argues that AR 740 is unconstitutional but he does not explain why. The PLRA's exhaustion requirement is premised on correctional agencies establishing both a grievance system and rules to regulate it. Specifically, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Peck's conclusory assertion that the AR is unconstitutional does not raise a genuine dispute that the administrative remedies were unavailable to him.

Peck next contends that his grievances disappear. He does not point to any specific grievances that have disappeared, nor does he assert that he filed a timely informal grievance regarding OIC #416942 that disappeared. At the summary judgment stage, Peck must produce some evidence beyond his conclusory statement to support this claim. *See Rodriguez v. Cnty. Of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (finding that, in applying the summary judgment standard, if inmates "had alleged only general and unsubstantiated" facts supporting their claims of unavailability, the court "would hold that they had not exhausted their administrative remedies."). Because he has not, this statement does not raise a genuine dispute that the grievance process was unavailable to him.

Peck next argues that the grievance process is unavailable to him because prison officials often reply to grievances after the 45-day window required by AR 740. *See* ECF No. 218-6 at 8 ("The time limit for a response to the informal grievance is forty-five (45) calendar days from the date the grievance is received by the grievance coordinator to the date returned to the inmate."). Peck attaches many grievances that were replied to beyond the 45-day window. *See, e.g.* ECF No. 249 at 250 (prison official responds over ten months later); *id.* at 223 (prison official responds 14 months later); *id.* at 149 (prison official responds three months later). While a prison's failure to timely respond can evince an unavailability of administrative remedies, courts

have typically found this where a timely grievance was never responded to or acknowledged. *See, e.g. Fordley v. Lizarraga*, 18 F.4th 344, 358 (9th Cir. 2021) (finding that the prison's failure to respond to the prisoner's emergency grievance for several months rendered administrative remedies unavailable). That is not the case here. Peck did not timely file a proper grievance. Also, while Peck provides examples of grievances answered outside of the 45-day period, he also provides many examples of grievances answered within the 45-day period, including around the time when he should have filed his grievance about OIC #416942. *See, e.g.*, ECF No. 249 at 77-78 (November 2016 grievance responded to and upheld in 41 days). Further, most of the grievances Peck included where the prison did not timely respond occurred long after Peck's six-month window to timely file. Thus, he has not raised a genuine dispute that delays in prison responses made the grievance process unavailable.

      Though Peck argues the grievance procedure is too complex for the average inmate to understand, and thus is unavailable, Peck demonstrates his understanding of the HDSP grievance system by attaching 12 grievances to his response that he appealed through the first and second levels. ECF No. 249 at 25-31; 56-64; 68-78; 108-114; 122-133; 135-142; 144-151; 153-166; 188-195; 205-218; 232-237; 239-251. This proves that Peck well understands the grievance procedure. ECF No. 249.

      Peck next voices concerns about AR 740's six-month limitation period conflicting with state and federal statutes. However, Nevada Revised Statutes (NRS) § 209.243 likewise gives prisoners a six-month window to file administrative claims after "the alleged loss, damage, or injury." Peck points to no federal statute that places a limit on how long prisoners have to file their grievances. Thus, this argument does not raise a genuine dispute as to unavailability either.

Peck states that in some instances he was not properly given the opportunity to appeal his grievance through the administrative process. However, Peck includes 32 grievance appeals in his response, showing that appeals were available to him. ECF No. 249 at 25; 29; 57; 60; 62; 69; 72; 74; 76; 78; 101; 109; 111; 120; 123; 125; 136; 138; 145; 147; 154; 156; 189; 191; 193; 207; 209; 233; 235; 241; 244; 247. Peck also argues that informal grievances are erroneously rejected for not listing a remedy. AR 740 requires informal grievances to include "the remedy sought by the inmate to resolve [his] claim." ECF No. 218-6 at 7. Any informal grievances that did not include a remedy were properly rejected under AR 740 and thus do not prove unavailability.

Finally, Peck complains there were no grievance forms available in his unit, making the grievance process unavailable. Peck raised the same argument in an informal grievance he filed in June 2017. ECF No. 249 at 146. In response to that grievance, a prison official noted that since January 2017, Peck submitted 41 informal grievances, with Peck filing first and second level grievances on a majority of the issues as well. ECF No. 249 at 146. These grievances were all filed during the six-month window when Peck should have filed a grievance about OIC #416942. This shows the grievance process was available during the relevant time.

Because no issue of fact remains that the HDSP grievance process was available to Peck, he did not properly exhaust. I therefore grant summary judgment for Wilson on Peck's claim against him.

      b. *Joel Quiroz*

Joel Quiroz is a correctional officer at HDSP and was the floor officer for Peck's unit on December 7, 2017. ECF No. 218-10 at 3. Quiroz received a bed move sheet with instructions to move Peck from his current unit. *Id.* Peck did not move beds and Quiroz charged Peck with failing or refusing to move to his assigned cell (OIC #436405). ECF No. 218-11 at 2. At a

disciplinary hearing, Peck was found guilty of this charge and was advised that "he may appeal through the grievance system within 10 days." *Id.* at 8.  Peck did not appeal.

Peck sues Quiroz for retaliating against him for engaging in protected litigation and grievance activity, and thus violating his First Amendment rights.  Peck alleges that OIC #436405 was retaliatory because Peck had filed another lawsuit that challenged HDSP's level system, and Peck contends that Quiroz charged Peck with #436405 to keep Peck in "Level 3." ECF No. 139 at 12.  He also alleges that Quiroz is retaliating against him because he "is literally famous for his grievances and . . . pursu[ing] lawsuits," and Quiroz had previously made comments to Peck about his proclivity for filing grievances. *Id.* at 18 (simplified).

Quiroz argues that Peck did not exhaust all available administrative remedies because he did not appeal the disciplinary hearing finding of guilty, nor did he file a grievance against Quiroz for bringing false or retaliatory charges.  Peck responds with the same "unavailability of remedies" arguments as he raises for Wilson.

Because Peck did not appeal his finding of guilt, he did not exhaust his administrative remedies.  Peck was advised at his disciplinary hearing for OIC #436405 that he had 10 days to appeal the findings.  This is the same timeframe that is listed in the "Inmate Disciplinary Manual" for disciplinary hearing appeals. ECF No. 218-3 at 26.  Peck's arguments about the grievance process being unavailable are the same that he raised against Wilson, and they fail for the same reasons.  *See* ECF No. 26; 29; 31; 127; 130; 19; 220.  I thus grant summary judgment for Quiroz on Peck's claim against him.

    c. *Francis Moka*

Francis Moka is a correctional officer at HDSP. ECF No. 218-15 at 2.  On February 20, 2019, Peck filed an informal grievance against Moka, stating that Peck pressed the emergency

9

call button in his room to "test its functionality" while Moka was on duty and Moka did not respond. ECF No. 218-16 at 2. The grievance was sent back to Peck stating that Peck did not note any harm or loss as required by AR 740.03. *Id.* Peck did not refile the grievance.

On November 18 and 19, 2019, Moka was on duty in Peck's unit. ECF No. 218-15 at 3. On November 19 and 20, Peck experienced blurred vision, slurred speech, tremors, and heart palpitations. ECF No. 220-5 at 3-4. On both days, he was seen by prison medical personnel, and he reported feeling better on the 21st. ECF Nos. 220-5 at 3-4; 220-6 at 3.

Peck sues Moka for violating his Eighth Amendment right against cruel and unusual punishment by being deliberately indifferent to his serious medical need. Peck alleges that Moka did not respond when Peck pushed the call button on November 18 while Peck was having a seizure. He alleges that he previously asked Moka why he refuses to answer the emergency call button, specifically because Peck has a seizure disorder, and Moka told Peck that he did not have time to answer prisoner's emergency call button requests.

Moka argues that Peck did not exhaust all available administrative remedies because he did not file a grievance against Moka following the November 2019 incident. Additionally, he contends that Peck never filed another, amended, grievance about Moka's failure to answer the call button after his February 2019 grievance was rejected. Peck repeats the arguments he uses for Wilson and Quiroz that the grievance procedure was unavailable to him.

Peck did not exhaust his administrative remedies because he did not file a grievance after the events of November 18-20, 2019. He raises the same availability arguments as he does for Wilson and Quiroz, so his arguments fail for the same reasons. Peck filed grievances during the six months following his November 2019's medical incidents, demonstrating that the HDSP grievance process was available to him at that time. *See* ECF No. 249 at 237. And because he

never filed a grievance against Moka for the November 2019 incident, he cannot claim that HDSP's delayed responses kept him from exhausting the remedy procedure he never began. Because Peck did not exhaust his administrative remedies, I grant summary judgment in Moka's favor.

### III. CONCLUSION

I THEREFORE ORDER that defendants' motion for summary judgment **(ECF No. 218)** is **GRANTED**.

I FURTHER ORDER the clerk of court to enter judgment in favor of defendants Duane Wilson, Joel Quiroz, and Francis Moka, and against plaintiff Frank Peck, and to close this case.

DATED this 9th day of February, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE